UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHN DOE,                                            Case No. 1:18-cv-00649

          Plaintiff,                                Honorable Paul L. Maloney
                                                     Magistrate Judge Ray Kent
v.

AQUINAS COLLEGE and AQUINAS
COLLEGE BOARD OF TRUSTEES and
KEVIN KWIATKOWSKI, STEPHEN
BARROWS, KEVIN QUINN, SANDY
HARLEY, THAD SALTER, and
HEATHER QUAKENBUSH, as agents for
AQUINAS COLLEGE, jointly and severally,

          Defendants.

---

| | |
|---|---|
| David A. Nacht (P47034) | Stephanie R. Setterington (P58177) |
| Adam M. Taub (P78334) | Charyn K. Hain (P46931) |
| NachtLaw, P.C. | Varnum LLP |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 101 N. Main Street, Suite 555 | Bridgewater Place, P.O. Box 352 |
| Ann Arbor, MI  48104 | Grand Rapids, MI  49501-0352 |
| (734) 663-7550 | (616) 336-6466 |
| dnacht@nachtlaw.com | srsetterington@varnumlaw.com |
| ataub@nachtlaw.com | ckhain@varnumlaw.com |

---

**<u>BRIEF IN SUPPORT OF DEFENDANTS'</u>**
**<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................... iv

I.   INTRODUCTION ...........................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................1

     A.   The College's Title IX Compliance .......................................................2

     B.   The Sexual Assault Judicial Process ("SAJP").....................................2

     C.   The Individual Defendants.....................................................................4

     D.   Doe's SAJP Proceeding..........................................................................4

III. LAW AND ARGUMENT .................................................................................7

     A.   Plaintiff's Complaint Should Be Dismissed Under Federal Rule of Civil
          Procedure 12(b)(6) For Failure To State Claims For Which Relief Can Be
          Granted....................................................................................................7

          1.   Legal Standard .................................................................................7

          2.   Plaintiff Fails to State a Claim For a Private Right of Action Under
               Title IX............................................................................................8

               a.   As stated by the Supreme Court in Gebser v. Lago Vista
                    Independent School District, actual Knowledge of the
                    Alleged Discrimination and Deliberate Indifference in
                    Responding is Required for Liability in a Private Action...............8

                    i.   An "Actual Knowledge" and "Deliberate
                         Indifference" Requirement under Title IX Is
                         Appropriate Based on the Source of Congress's
                         Authority. ........................................................................10

                    ii.  An "Actual Knowledge" and "Deliberate
                         Indifference" Standard Is Warranted Based on
                         Comparison of the Differing Statutory Purposes of
                         Title IX and Title VII. ......................................................11

                    iii. An "Actual Notice" and "Deliberate Indifference"
                         Standard Is Warranted Based on Differences in
                         Title IX's and Title VII's Remedial Provisions. .................11

i

`

iv.    An "Actual Notice" and "Deliberate Indifference" Standard Is Warranted Based on Differences in Title IX's and Title VII's Definitional Provisions. .............12

v.    An "Actual Notice" and "Deliberate Indifference" Standard Is Warranted Based on Title IX's Administrative Scheme. .....................................12

b.    Gebser's Knowledge Standard Applies To Title IX Discrimination Other Than Sexual Harassment, and to Remedies Other Than Money Damages. .........................13

c.    "Actual Knowledge" and "Deliberate Indifference" Requires Notice of Alleged Discrimination Under Title IX, as Opposed to Knowledge of General Alleged Wrongdoing or Error. ..........................................................................15

d.    Application: Plaintiff Has Not Alleged and Cannot Establish the "Actual Knowledge" and "Deliberate Indifference" Requirements for His Title IX Claim. ....................16

3.    Plaintiff States No Title IX Claim Against the Non-Aquinas Defendants as they are not Educational Institutions or Programs that Receive Federal Funds. ........................................................................17

4.    Plaintiff States No Claim Under Michigan Law for Breach of Express or Implied Contract or Promissory Estoppel Based on Student Handbook Procedures. ..................................................18

5.    Plaintiff States No Claim For Breach Of Contract Against the Non-Aquinas Defendants Because there is No Contract Alleged to Exist Between Them. ........................................................................20

6.    Plaintiff States No Claim of Promissory Estoppel Against the Non-Aquinas Defendants as No Alleged Promise is Attributed to Them. ........21

7.    Plaintiff States No Claim for Breach of Contract Based on Alleged Arbitrary and Capricious Decision-Making. ...............................................22

8.    Plaintiff States No Claim for Negligence, Negligence Per Se or Gross Negligence. ...........................................................................23

a.    Plaintiff's Claims Fail as to All Defendants Because There is No Special Relationship Creating a Legal Duty. .......................23

b.    Plaintiff's Negligence Claims Fail against the Non-Aquinas Defendants Based on the Absence of Any Individual Alleged Duty. ...........................................................................24

`

9.    Defendant Aquinas College Board of Trustees Should Be Dismissed as a Party Because it is Not a "Person" with the Capacity to be Sued. ................................................................24

B.    If Count I is dismissed, but Other Counts Remain, Plaintiff's Claims at Counts II through Count VI Should be Dismissed for Lack of Subject Matter Jurisdiction. ................................................................25

IV.    CONCLUSION ................................................................25

`

# INDEX OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................ 7

*Austin v. University of Oregon,*
205 F. Supp. 3d 1214 (D. Or. 2016) ............................................................... 23

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
528 F.3d 426 (6th Cir. 2008) .................................................................... 7, 17

*Booker v. Detroit,*
251 Mich. App. 167, 650 N.W.2d 680 (2002), rev'd in part on other grounds 469 Mich.
892, 668 N.W.2d 623 (2003) .......................................................................... 21

*Brown v. University of Findlay,*
2016 WL 1644666 (N.D. Ohio 2016) ............................................................. 24

*Cannon v. University of Chicago,*
441 U.S. 677 (1979) .................................................................................. 9, 11

*Doe v. Amherst College,*
238 F. Supp. 3d 195 (D. Mass. 2017) ............................................................ 23

*Doe v. Case Western University,*
2017 WL 3840418 (N.D. Ohio 2017) ............................................................. 24

*Doe v. Clairborne City, Tennessee,*
103 F.3d. 495 (6th Cir. 1996) ....................................................................... 16

*Doe v. Columbia College Chicago,*
299 F. Supp. 3d 939 (N.D. Ill. 2017) ............................................................ 23

*Doe v. Trustees of Boston Coll.,*
2016 WL 5799297 (D. Mass. Oct. 4, 2016) ................................................... 23

*Fitzgerald v. Barnstable Sch. Comm.*
555 U.S. 246 (2009) ...................................................................................... 17

*Franklin v. Gwinnett County Public Schools,*
503 U.S. 60 (1992) ........................................................................... 9, 10, 13

*Frederick v. Simpson College,*
160 F. Supp. 2d 1033 (S.D. Iowa) ................................................................. 15

*Fultz v. Union-Commerce Associates,*
470 Mich. 460 (2004) .................................................................................... 23

`

*Gebser v. Lago Vista Independent School District,*
    524 U.S. 274 (1998) ................................................................. 8, 9, 10, 11, 12, 13, 14, 15, 16

*Grandson v. University of Minnesota,*
    272 F.3d 568 (8th Cir. 2001) ........................................................... 14

*In re DeLorean Motor Co.,*
    991 F.2d 1236 (6th Cir. 1993) ......................................................... 25

*Jackson v. Birmingham Board of Education,*
    544 U.S. 167 (2005) ...................................................................... 13

*Kieta v. Thomas Cooley Law School,*
    290 Mich. App. 144 (2010) ............................................................. 19

*Kollaritsch v. Michigan State University Board of Trustees,*
    298 F. Supp. 3d 1089 (W.D. Mich. 2017) ....................................... 16

*Lee v. University of Michigan-Dearborn,*
    2009 WL 1362617 (Mich.App. 2009) ...................................... 18, 19

*Mansourian v. Regents of the University of California,*
    602 F.3d 957 (9th Cir. 2010) ......................................................... 14

*Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.,*
    287 F.3d 568 (6th. Cir. 2002) ........................................................ 25

*Murdock v. Higgins,*
    208 Mich. App. 210; 527 N.W.2d 1 (1994) .................................. 23

*Picozzi v. Sandalow,*
    623 F. Supp. 1571 (E.D. Mich. 1986) ........................................... 18

*RBS Citizens Bank, N.A. v. Purther,*
    22 F. Supp. 3d 747 (E.D. Mich. 2014) .......................................... 20

*Sterrett v. University of Michigan,*
    2014 WL 7722965 (Michigan Court of Claims) ..................... 19, 22

*Stiles ex. Rel. D.S. v. Grainger City, Tennessee,*
    819 F.3d 834 (6th Cir. 2016) ......................................................... 16

*Swierkiwica v. Sorema, N.A.,*
    534 U.S. 506 (2002) ........................................................................ 7

*Wal-Juice Bar. Inc. v. Elliot,*
    899 F.2d 1502 (6th Cir. 1990) ....................................................... 25

`

*Weiner v. Klais and Co., Inc.,*
    108 F.3d 86 (6th Cir. 1997) ................................................................... 7, 17

*Williams v. Cunningham Drug Stores,*
    429 Mich. 495 (1988) ............................................................................ 23

*Ypsilanti Twp. v. Gen. Motors Corp.,*
    201 Mich. App. 128, 506 N.W.2d 556 (1993) .................................... 21

## **Statutes**

Title IX of the Educational Amendments of 1972 ......................................................... 2

## **Other Authorities**

20 U.S.C. 1682 ................................................................................................. 12, 13

## **Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 25

Fed. R. Civ. P. 12(b)(6) .................................................................................... 7, 17

MCR 2.116(C)(10) ............................................................................................. 18

MCR 2.116(C)(8) .......................................................................................... 18, 19

MCR 2.201 .......................................................................................................... 24

## I.      INTRODUCTION

Plaintiff John Doe ("Doe" or "Plaintiff") has filed suit against Aquinas College ("Aquinas"), its Board of Trustees, and several individual defendants, challenging his expulsion from the College as a student.  The expulsion was based on a determination that Plaintiff violated provisions of Aquinas's student code related to sexual misconduct and harassment.  Although there is no merit to Plaintiff's claims of any unfair treatment, the case should be dismissed now, as a matter of law, based on the pleadings.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Aquinas is a Catholic, private, non-profit, liberal arts college located in Grand Rapids, Michigan. (Articles of Incorporation, Ex. A.)  The philosophy and direction of the College is based in Catholic beliefs and the values of the Dominican tradition. (Ex. A.) The College is committed to non-discrimination, integrity and respect as evidenced by its non-discrimination, and integrity statements:

> "It is the policy of Aquinas College that no person on the basis of race, color, religion, ethnic origin, age, sex, sexual orientation, marital status, or disability shall be discriminated against, excluded from participation or employment in, or be otherwise subjected to discrimination under any program or activity for which Aquinas College is responsible." . . .
>
> "Aquinas College is rooted in the Dominican traditions of prayer, study, community and service, combined with a deep respect for truth, honesty and integrity. In this spirit, we strive to create an environment in which integrity is prized and practiced.  We expect all community members to uphold these values through honesty, fairness, and respect for others."  *Id*.

(Mission & Vision Website Materials, Ex. B.) .

Aquinas maintains rules, policies, and guidelines by which students must abide.  Such items are not contractual in nature, and Aquinas reserves the discretion to change these policies as it determines appropriate. While applicants agree to abide by the policies of the College, the

1

`

enrollment and scholarship documentation of Aquinas involves no agreement or commitment on the part of the College to adhere to any particular set of student conduct processes or rules.  (Doe Application, Scholarship Materials Ex. C.)

## A.    The College's Title IX Compliance

Aquinas College is a recipient of federal funds for educational programming covered by Title IX of the Educational Amendments of 1972 ("Title IX").  The College abides by its requirements to provide educational programming that is free from discrimination based on sex.

As a part of its Title IX compliance program, Aquinas maintains a non-discrimination policy, and student code prohibitions against harassment, including sexual harassment, sexual assault, dating violence, domestic violence, stalking, and sexual misconduct/exploitation. (Student Code Excerpts, Ex. D.)  The College also provides training and resources to all incoming students on avoiding, preventing, and addressing situations of sexual assault, harassment, and other sex discrimination.  Training is conducted at freshman orientation, and addresses the College's expectations and rules surrounding matters of sexual activity, potential ramifications for violations, the critical issue of consent, response/prevention strategies, and support/reporting resources.  The College also trains its employees who may be involved in processing allegations of sexual assault, dating violence, domestic violence, stalking, or sexual misconduct/exploitation.

## B.    The Sexual Assault Judicial Process ("SAJP")

In accordance with regulatory requirements, Aquinas implemented in 2012 a specific disciplinary process to address allegations of sexual assault and similar concerns, the "Sexual Assault Judicial Process" ("SAJP").  (SAJP, Ex. E.)  The SAJP includes required provisions specifying the timelines and procedures for processing complaints of alleged violations, and

2

`

training of individuals responsible for administering various components of the process.  The SAJP has been revised periodically since its implementation in keeping with agency guidance.

The SAJP includes an investigation phase, in which an assigned investigator interviews witnesses and gathers documents concerning the facts of the underlying incident, and a hearing phase in which a panel of three trained employees (the Judicial Hearing Board ("JHB")) preside over a hearing regarding the alleged violations.  *Id.*  The JHB is provided the investigator's written report in advance of the hearing, but the hearing process allows the parties to call witnesses and introduce evidence for the JHB's consideration. *Id.*  The JHB may also call witnesses on its own initiative.  *Id.*  Following the hearing, the JHB deliberates and issues a determination regarding whether violations of the applicable rules has occurred, and, if a violation is found, the appropriate sanction.  *Id.*

Either party may appeal the determination in writing within five (5) business days.  *Id.*  Appeals may be based on: (a) new evidence; (b) incorrect procedure which substantially impacted the fairness of a judicial hearing, or (c) undue penalty.  *Id.*  The appeals officer may affirm the decision,  return the case to the adjudicating officer or committee for a new hearing, or change the charges and/or sanction(s) originally imposed.  *Id.*  The appeal decision is final. *Id.*

The SAJP is gender neutral, and provides the same process and treatment of complainants and respondents.  For example, the same timelines apply to all parties.  *Id.*  Upon the initiation of a complaint, all parties are subject to a "no contact" order prohibiting each from having contact with the other during the pendency of the SAJP.  *Id.*  Complainants and respondents each have the same rights to review the written statements of witnesses and the evidence gathered in the investigation.  *Id.*  Complainants and respondents are each provided the same designated reasonable amount of time to prepare for the hearing.  *Id.*  While Complainants and respondents

`

must each represent themselves in the SAJP, each may select an advisor of his or her choosing, including an attorney, if desired, to support them throughout the process and be present with them at all phases, including at the hearing. *Id.* Both complainants and respondents must direct all questions to one another or to witnesses only through the JHB. *Id.* The complainant and respondent are both simultaneously issued the same written determination of the JHB. *Id.* Both parties have the same rights as one another to appeal. *Id.*

Since the SAJP's inception, Aquinas has had only one matter proceed to hearing under the process. That instance is the current case of John Doe and Jane Roe ("SAJP Proceeding").

**C.     The Individual Defendants**

Dr. Kevin Quinn is the President of Aquinas. Dr. Stephen Barrows is the Executive Vice President, Provost and Dean of Faculty, and was the appeals officer in the SAJP Proceeding. Kevin Kwiatkowski is the director of Aquinas College's public safety department, and was the investigator in the SAJP Proceeding. Sandra Farley is an admissions and academic advisor. Heather Kesserling-Quakenbush is an associate provost and dean of curriculum. Thad Salter is an institutional research analyst for Aquinas. Farley, Quakenbush, and Salter comprised the JHB panel for the SAJP Proceeding. Aquinas's Board of Trustees is not a separate legal entity from Aquinas, but rather is a board of volunteer trustees and officials elected pursuant to the Articles of Incorporation and bylaws of Defendant Aquinas as a non-profit corporation and College. (Ex. A.) The Board of Trustees oversees Aquinas in accordance with Aquinas's mission. *Id.*

**D.     Doe's SAJP Proceeding**

On May 2, 2017, Aquinas College received a complaint by current freshman student Jane Roe against Plaintiff, also then a current freshman student. An investigation was promptly initiated regarding two alleged student code violations:  Section 3.E. "Sexual Assault, Dating Violence, Domestic Violence, and Sexual Misconduct/Exploitation," and Section 3.A.

`

"Behavioral Harassment." (Notice, Ex. F.) At issue was whether a non-consensual sexual encounter between Plaintiff and Roe occurred in violation of the student code in August 2016, and whether Plaintiff had violated the student code by allegedly communicating to others about the incident thereafter, including showing of a photograph of a topless female with a pillow over her face to other students and allegedly claiming the photo was of Roe.

Kwiatkowski was assigned as investigator. "No contact" orders were issued to both parties. (No Contact Orders, Ex. G.) Farley, Quakenbush, and Salter were selected as JHB panel members.[1]

The investigation was completed, and the JHB thereafter determined there was sufficient evidence to proceed to hearing. A hearing was scheduled and conducted on August 8, 2017. (Ex. H.) After consideration of the evidence, the JHB determined that Plaintiff was responsible for both alleged student code violations, and determined that the appropriate sanction for them was expulsion. A written determination was issued to both parties on August 14, 2017. (Determination, Ex. I.)

Plaintiff appealed the JHB's determination, claiming incorrect procedures were applied including that: 1) he was not allowed to review a student RA report from December 2016 concerning the incident; 2) he was provided inadequate time to review documents and/or present at the hearing; and 3) the JHB incorrectly interpreted the preponderance of evidence standard of proof. (Appeal Letter, Ex. J.[2]) Plaintiff also claimed the sanction of expulsion was too severe. *Id.* Plaintiff did not claim the process was discriminatory or biased against him based on gender.

---

[1] Plaintiff engaged an outside attorney, a specialist in education law, who served as his support person throughout the process

[2] Plaintiff's appeal letter (Ex. J) and his December 2016 letter to President Quinn (Ex. M) contain significant factual detail and context concerning Roe and other students of the College who are not parties to this litigation. Such factual detail is not necessary for the Court's

`

Barrows, as the designated appeals officer, reviewed these concerns and found no incorrect procedure or substantial impact on fairness.  Specifically, Barrows found that the December 2016 documentation was a "pre-process" document and not provided to either party or the JHB as a matter of the College's generally applicable policy administration considerations, that both parties were provided the same access to the same evidence, that both parties had received the same amount of time to prepare for the hearing, and that the JHB had appropriately interpreted the preponderance standard.  Barrows further found that the sanction imposed was not unduly severe.  Barrows affirmed the JHB decision on August 30, 2017.  (Appeal Response, Ex. K.)

On December 22, 2017, though the SAJP does not allow for further appeal beyond the level already completed, Plaintiff protested his expulsion and the SAJP further through an extensive, fifteen page, single spaced letter to President Quinn. (Doe Letter, Ex. L.)  The letter elaborated on the alleged errors cited in Plaintiff's appeal, and also raised several additional alleged errors Plaintiff had not raised during the SAJP. Plaintiff did not make any claim his treatment under the procedure was discriminatory or biased based on his gender.

Notwithstanding the finality of the SAJP appeal process, the College undertook review of Plaintiff's various allegations, but ultimately found no basis to disturb the findings of the SAJP process or modify Plaintiff's status.  The College informed Plaintiff of this by letter dated

---

determination of this Rule 12(b)(6) motion.  For purposes of this motion, and in the interest of ensuring the College's compliance with FERPA as to these records in its possession as they relate to students who are not parties to this case, the attached exhibits are redacted both of the names of any students, and as to factual detail that is extraneous to this motion and could, if disclosed, allow the identities of such students to be discerned.  The unredacted documents will be made available as appropriate upon an order for *in camera* review, protective order, or other order of the court.

`

February 22 , 2018.  (Quinn Letter, Ex. M.)  Plaintiff's Complaint in the instant lawsuit followed on June 11, 2018.

### III.    LAW AND ARGUMENT

**A.    Plaintiff's Complaint Should Be Dismissed Under Federal Rule of Civil Procedure 12(b)(6) For Failure To State Claims For Which Relief Can Be Granted.**

      1.    Legal Standard

A claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, if accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*  When a defendant attaches to a motion to dismiss exhibits that are referenced in the plaintiff's complaint and central to the plaintiff's claims, such exhibits are considered **part of the pleadings and properly considered in ruling on a 12(b)(6) motion**.  *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997), *overruled on other grounds, Swierkiwica v. Sorema, N.A.,* 534 U.S. 506 (2002).

`

2.    <u>Plaintiff Fails to State a Claim For a Private Right of Action Under Title IX</u>.

    a.    *As stated by the Supreme Court in Gebser v. Lago Vista Independent School District, actual Knowledge of the Alleged Discrimination and Deliberate Indifference in Responding is Required for Liability in a Private Action.*

In *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1998), the United States Supreme Court considered the standards for a private right of action under Title IX, in that instance addressing a claim of sexual harassment against the school district based on the claimed actions of a teacher within the school district. *Id.* In *Gebser*, a teacher of the Lago Vista School District engaged in a sexual relationship with a student. *Id.* at 274. The relationship began when the student was in eighth grade and continued for nearly two years, during which time the student did not report the relationship to school officials. Two parents of other students did report that the teacher had a practice of making "inappropriate" comments to female students in class. During that time period, the school district was not in compliance with Title IX regulations, in that it had not distributed either an official grievance procedure for lodging sexual harassment complaints or a formal anti-harassment policy. *Id.*

In January 1993, the student and teacher were discovered having sex, and the teacher was arrested and terminated from employment. The student filed a private action against the district under Title IX, seeking money damages. *Id.* The plaintiff argued that the school district should be liable for the discriminatory acts (in that case sexual harassment) by the teacher, relying on theories of *respondeat superior* and/or constructive notice applicable under Title VII of the Civil Rights Act of 1964, and arguing those were equally applicable under Title IX. The District Court granted summary judgment to the school district. The Fifth Circuit Court of Appeals upheld the judgment, holding that school districts were not liable for teacher-student harassment unless an employee with supervisory power over the offending employee knew of the abuse, had

`

the power to end it, and failed to do so.  Plaintiffs appealed, and the U.S. Supreme Court accepted the case to decide the matters of first impression presented.

Recognizing the Court's previous decision in *Cannon v. University of Chicago,* 441 U.S. 677 (1979), which held that an implied private right of action existed under Title IX, and its later decision in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60 (1992), which held that, in the private right of action may include monetary damages in cases of alleged intentional discrimination by the funding recipient, the *Gebser* Court explored the requirements and contours of liability for such a private right of action under Title IX.  *Gebser, supra.* at 281. Following extensive analysis, the *Gebser* Court found the threshold for liability in a private right of action under Title IX is different than the threshold for entity liability under Title VII, and requires, at a minimum, **that an official of the recipient of federal funding who has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of the alleged discrimination in the recipient's programs and fails adequately to respond.**  *Id.* at 290.  The *Gebser* Court held that the **measure of the failure to respond is whether the recipient of federal funds exhibited "deliberate indifference to discrimination," meaning that an official of the recipient is advised of discrimination under Title IX and "refuses to take action to bring the recipient into compliance."**  *Id.*

While *Gebser* dealt with a circumstance of sexual harassment, its rationale is instructive as to private actions under Title IX generally.  The *Gebser* Court distinguished the sources of statutory authority, the remedy provisions, and definitions between Title IX and Title VII in determining the appropriate scope of a private right of action under Title IX as requiring actual knowledge of discrimination and deliberate indifference on the part of the funding recipient.  The

`

Court further cited the structure of the administrative enforcement provisions of Title IX as a basis for this conclusion.

> i.  An "Actual Knowledge" and "Deliberate Indifference" Requirement under Title IX Is Appropriate Based on the Source of Congress's Authority.

As noted by G*ebser,* Title IX is contractual in nature, imposing obligations on an entity as a condition of the entity receiving federal financial assistance, and that requirements of Title IX arise under Congress's spending power.  *Id.* at 286-287.  In this respect, Title IX is different than Title VII, which was implemented pursuant to Congress's authority to regulate interstate commerce, and operates as an outright prohibition not conditional upon any contractual arrangement with covered employers.  *Id.*

When a statute operates by attaching a condition to the use of federal funds under Congress's spending power, the Court is to examine closely the propriety of private actions holding the recipient liable in money damages for non-compliance with the condition.  *Id.* at 287, *citing, Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 74-75 (1992). (finding that Title IX's private right of action may include a monetary damage remedy in cases of intentional discrimination on the part of the funding recipient, in a case in which the plaintiff alleged sexual harassment at the hands of a teacher, and further alleged that school administrators knew about the plaintiff's harassment concerns and took no action, even attempting to dissuade the student from filing charges.) A "central concern" in situations involving obligations imposed pursuant to Congress's spending power is ensuring that the receiving entity of federal funds has notice that it will be liable for a monetary award; in other words, that it was aware of the discrimination at issue. *Gebser, supra,* at 287.

`

        ii.        An "Actual Knowledge" and "Deliberate Indifference" Standard Is Warranted Based on Comparison of the Differing Statutory Purposes of Title IX and Title VII.

As noted in *Gebser,* Title VII's express purposes are to eradicate discrimination throughout the economy and to "make persons whole for injuries suffered through past discrimination. *Id.*. Title IX, conversely, does not speak to compensating individuals for past discrimination but is instead prospective only; designed to "avoid the use of federal resources to support discriminatory practices, and to provide individual citizens effective protection against those practices. *Gebser, supra* at 286, *citing, Cannon, supra,* at 704. *Gebser* concluded that Title IX's more limited, prospective statutory purpose did not evidence an intent by Congress to impose liability under circumstances other than actual knowledge and deliberate indifference, including liability under *respondeat superior* for constructive notice theories utilized under Title VII. *Gebser, supra,* at 286.

        iii.       An "Actual Notice" and "Deliberate Indifference" Standard Is Warranted Based on Differences in Title IX's and Title VII's Remedial Provisions.

The *Gebser* Court also noted differences in Title IX's and Tile VII's remedy provisions in support of its conclusion that actual knowledge of alleged discrimination and deliberate indifference is required for private actions under Title IX. Specifically, Title VII states an express, private right of action that clearly notifies covered entities of a contemplated damage remedy, the conditions for it, and its monetary limits, while Title IX contains no express private right of action at all, and identifies no damage remedy, much less any confines of such remedy. *Id.* at 286. The Court noted that Title VII's damage provisions did not originally exist, but were only added to enhance the previously available remedies of injunctive and equitable relief. The *Gebser* court concluded it would be non-sensical, given that history, to conclude that Congress's

`

silence in Title IX was meant to convey a right to unlimited damages with no prior notice requirements.  *Id* at 286.

> iv.     An "Actual Notice" and "Deliberate Indifference" Standard Is Warranted Based on Differences in Title IX's and Title VII's Definitional Provisions.

As *Gebser* noted, Title VII explicitly defines a covered "employer" to include "agents" of the employer, *Id* at 283., citing *see,* 42 U.S.C. 2000(e)-2(b).  Conversely, Title IX contains no comparable reference or call for application of agency principles. *Gebser, supra,* at 283.  This further supported the *Gebser* court's view that actual knowledge, rather than agency principles applied in cases under Title VII, should be applied to determine liability in a private action under Title IX.

> v.      An "Actual Notice" and "Deliberate Indifference" Standard Is Warranted Based on Title IX's Administrative Scheme.

Finally, the *Gebser* Court noted that Title IX's own administrative enforcement scheme shows Congress did not intend for funding recipients to be held liable where liability is based on principles of vicarious liability or constructive notice.  Specifically, while an agency may enforce Title IX through proceedings to suspend or terminate funding, or by "other means authorized by law," an agency may not initiate enforcement proceedings until it has "advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means."  *Id.* at 288, *citing* 20 U.S.C. 1682.  *Gebser* noted: "[p]resumably, a central purpose of requiring notice of the violation to the appropriate person, and an opportunity for voluntary compliance before administrative enforcement proceedings can commence, is to avoid diverting education funding from beneficial uses where a recipient was unaware of discrimination in its programs and is willing to institute prompt corrective measures." *Id.* at 289.  "It would be unsound, we think, for a statute's *express* system

`

of enforcement to require notice to the recipient and an opportunity to come into voluntary compliance while a judicially *implied* system of enforcement permits substantial liability without regard to the recipient's knowledge or its corrective action upon receiving notice." *Id.*

> b. *Gebser's Knowledge Standard Applies To Title IX Discrimination Other Than Sexual Harassment, and to Remedies Other Than Money Damages.*

Under the rationale of *Gebser,* the "actual knowledge" and "deliberate indifference" requirements for a private right of action are not limited to cases involving alleged harassment. Rather, they apply with equal force to other types of alleged discrimination under Title IX that is perpetuated by individual employees rather than through an official, expressly discriminatory policy of the educational program or institution itself. *Gebser's* rationale further applies to other types of relief sought through a private action under Title IX besides money damages, including claims requesting injunctive relief and/or attorney's fees.

As to the applicability of the knowledge requirement to other forms of discrimination under Title IX besides sexual harassment, this is acknowledged by the United States Supreme Court's later decision in *Jackson v. Birmingham Board of Education,* 544 U.S. 167 (2005)**Error! Bookmark not defined.**. In that case, the Court was considering whether Title IX provided a cause of action to a coach who claimed he was retaliated against for reporting alleged sex discrimination to the school concerning the treatment of female sports teams as compared to male sports teams. The Court, referencing *Gebser,* described the liability scheme under Title IX as follows:

> "Title IX's enforcement scheme also depends on individual reporting because individuals and agencies may not bring suit under the statute unless the recipient has received "actual notice" of the discrimination. *Id.*, at 288, 289–290, 118 S.Ct. 1989 (holding that an appropriate official of the funding recipient must have actual knowledge of discrimination and respond with deliberate indifference before a private party may bring suit); 20 U.S.C. § 1682 (providing that a federal agency may terminate funding only after it "has advised the appropriate person or

13

`

persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means").

*Id.* at 181 (finding Title IX provides a cause of action for retaliation.)

While many subsequent Title IX cases do not appear frequently to involve issues of a lack of prior notice to the funding recipient of alleged discrimination, certain federal courts that have addressed the actual knowledge issue in cases of alleged Title IX discrimination other than sexual harassment have similarly rejected claims that fail to meet the threshold of "knowledge" and "deliberate indifference" requirements for a private right of action.  *See, e.g. Grandson v. University of Minnesota,* 272 F.3d 568, 575 (8th Cir. 2001)**Error! Bookmark not defined.** (denying motion for leave to amend damage claim in private right of action under Title IX for alleged unequal treatment of female sports teams where plaintiffs made no allegation of prior notice concerning the alleged discrimination to appropriate university officials, no allegations of deliberate indifference by the university, and no allegation that the student athletes afforded the university an opportunity to rectify the alleged violations.)[3]

As to the applicability of the "knowledge" and "deliberate indifference" requirements to other remedies under the statute, aside from money damages, such as injunctive relief or attorney's fees, this issue has not yet been directly addressed by the United States Supreme Court, nor has it been analyzed in depth by the Sixth Circuit or other federal circuits.  The thoroughly stated rationale of *Gebser,* however, applies with equal force to such cases.  Just as is

---

[3] Cases in which *Gebser* has not been applied often typically involve express, official discriminatory policies of the funding recipient, which such courts have concluded are easily attributable to the funding recipient and which evidence the intentional discrimination Title IX is designed to prevent.  *See, e.g. Mansourian v. Regents of the University of California,* 602 F.3d 957 (9th Cir. 2010)**Error! Bookmark not defined.**(case involving College's denial of opportunity to female employees to participate on wrestling team.)   Such cases are distinguishable from cases like the present case, where the alleged discrimination is in the form of alleged actions by individual employees toward individual students, as opposed to an official policy that expressly provides differential treatment by gender.

`

the case with lawsuits seeking money damages, in the words of *Gebser,* it would be "unsound" for the statute's express (administrative) system of enforcement to require actual notice and an opportunity for voluntary compliance before imposition of an injunction, but for the implied system of enforcement not to require such elements. Indeed, allowing injunctive relief without requiring such elements would subject funding recipients to potential attorney's fees liability to plaintiffs as prevailing parties under Title IX, thereby diverting educational funds from their intended use, with no real opportunity for the funding recipient avoid such consequences.[4]

> c.  *"Actual Knowledge" and "Deliberate Indifference" Requires Notice of Alleged Discrimination Under Title IX, as Opposed to Knowledge of General Alleged Wrongdoing or Error.*

The "knowledge" required for Title IX liability in a private action must amount to notice of **alleged discrimination** in violation of the statute.  General complaints of inappropriate behavior, as opposed to allegations of sexually discriminatory conduct, are not sufficient. *Gebser,* 524 U.S. at 291 (holding that the school principal's knowledge of allegations that the teacher had made "inappropriate" comments in class was not sufficient to establish knowledge of alleged sex discrimination under Title IX.).  Moreover, the "knowledge" required is knowledge of alleged **discrimination based on sex**, not simply knowledge of alleged technical violations of Title IX regulations.  For example, in *Gebser*, the plaintiff's complaint to the school district that it had failed to publish a grievance policy as required under Title IX regulations did not establish

---

[4] Indeed, even among the scant cases addressing this issue in any detail, courts have found, irrespective of *Gebser, that* injunctive relief to be unavailable in cases contesting a school's disciplinary decisions, based on the Supreme Court's admonition that courts should "refrain from second-guessing the disciplinary decisions made by school administrators" and based on the administrative enforcement scheme of Title IX, which indicates that schools should be given an opportunity to come into voluntary compliance before becoming subject to equitable remedies.  *See Frederick v. Simpson College,* 160 F. Supp. 2d 1033 (S.D. Iowa) (declining to find *Gebser* applicable to claims for injunctive relief, but dismissing claim for injunctive relief based, in part, on administrative enforcement structure cited by *Gebser.)*

`

the school district's "knowledge" as required for recovery in a private right of action, because the alleged violation of Title IX regulations (failure to implement a grievance procedure) was not discrimination based on sex.  *Id.* at 291-292.

Similarly, "'deliberate indifference," as required for a Title IX violation, does not occur through a collection of sloppy or even reckless oversights; it arises from obvious indifference to discrimination under the statute."  *See Kollaritsch v. Michigan State University Board of Trustees,* 298 F. Supp. 3d 1089, 1101 (W.D. Mich. 2017)**Error! Bookmark not defined.Error! Bookmark not defined.**, *citing Doe v. Clairborne City, Tennessee,* 103 F.3d. 495, 508 (6th Cir. 1996)**Error! Bookmark not defined.**.  The standard for "deliberate indifference" is a "high bar," and not one of mere reasonableness.  *Kollaritsch, supra,* 1101**Error! Bookmark not defined.Error! Bookmark not defined.**, *citing Stiles ex. Rel. D.S. v. Grainger City, Tennessee,* 819 F.3d 834, 848 (6th Cir. 2016)**Error! Bookmark not defined.**.  Under the standard, courts should not second-guess an institutions disciplinary decisions.  *Kollaritsch, supra* at 1101.

       d.    *Application: Plaintiff Has Not Alleged and Cannot Establish the "Actual Knowledge" and "Deliberate Indifference" Requirements for His Title IX Claim.*

In the current case, Plaintiff asserts a claim against all Defendants for violation of Title IX.  Plaintiff seeks various forms of relief, including money damages, injunctive relief, and attorney's fees.  However, Plaintiff's lawsuit is the very first occasion in which he has claimed to Defendants that his treatment was discriminatory based on his sex.  Plaintiff does not plead (nor could he) that he ever informed an official of Defendant Aquinas during or after his disciplinary proceeding that he had concerns he was being discriminated against based on his gender.  Indeed, the documentation central to the case makes abundantly clear he never did so.  Nowhere, including in Plaintiff's seven-page, single spaced appeal of the disciplinary determination, and his fifteen-page, single spaced letter to the president of Aquinas and Board of Trustees outlining

`

his complaints about the disciplinary process, did Plaintiff ever once allege that the process or any action of any individual was tainted by gender-based bias against him. While Plaintiff alleged his treatment was generally unfair and "biased," such non-specific complaints are simply not sufficient to notify Defendant he was complaining of gender or sex discrimination. Further, while Plaintiff complained that the disciplinary process did not comply with certain technical requirements under Title IX regulations, he made no allegation that he was treated differently from anyone else in the process, much less treated differently based on his gender.[5]

Plaintiff's Complaint fails to plead facts necessary to support a private right of action under Title IX. Plaintiff's Title IX claim at Count I of the Complaint must be dismissed in its entirety as to all Defendants.[6]

### 3. Plaintiff States No Title IX Claim Against the Non-Aquinas Defendants as they are not Educational Institutions or Programs that Receive Federal Funds.

"Title IX applies to **institutions and programs** that receive federal funds, which may include nonpublic institutions, but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.* 555 U.S. 246, 257 (2009). (emphasis added.) In the present case, Plaintiff has alleged in his

---

[5] For example, Plaintiff alleges in his December 2017 letter that he was denied the entire, unredacted investigation report prior to the hearing, but does not, and cannot, allege that he was treated any differently than the female Complainant, who received the exact same documentation prior to the hearing that Plaintiff received. Plaintiff further complains in his December 2017 letter that the determination letter did not provide the rationale for the determination as required by regulation, but does not and cannot allege that he was treated any less favorably than the female Complainant, because both parties received the same determination letter. (Letter, Ex. J.)

[6] Any leave to amend the Complaint would be futile based on consideration of the attached SAJP documents, all of which are cited in the Complaint and central to a determination of Plaintiff's claims, and therefore appropriately considered in a 12(b)(6) motion. *Bassett, Weiner, supra.* The extensive documentation of Plaintiff's communications of his complaints to the College confirms he did not make any allegation of gender discrimination to an appropriate official of the College.

`

Complaint only that *Defendant Aquinas College* is an educational institution that receives federal funding. (Complaint ¶219). Plaintiff does not allege (nor could he) that Defendants Quinn, Barrows, Salter, Quakenbush, Farley, or Kwiatkowski are educational programs or institutions that receive federal funding. He further does not (and could not) allege that Defendant Board of Trustees is such an entity distinct from Defendant Aquinas College. Nonetheless, Plaintiff's Title IX claim at Count I of the Complaint is not limited to Defendant Aquinas College, but references alleged violations by all "Defendants." Plaintiff has not alleged, and cannot state or pursue a Title IX claim against Defendants Quinn, Barrows, Salter, Quakenbush, Farley, Kwiatkowski, and/or Board of Trustees individually. Count I, to the extent it remains at all, should be dismissed as to all Defendants other than Defendant Aquinas College.

4.  Plaintiff States No Claim Under Michigan Law for Breach of Express or Implied Contract or Promissory Estoppel Based on Student Handbook Procedures.

Several Michigan cases and federal cases interpreting Michigan law have considered whether a breach of contract or promissory estoppel claim may proceed based on the contents of disciplinary procedures contained in student handbooks and/or enrollment materials. Such decisions have routinely found such claims to fail as a matter of law.

In *Picozzi v. Sandalow,* 623 F. Supp. 1571 (E.D. Mich. 1986), the plaintiff law student's allegation that he entered a contract with the University of Michigan Law School upon enrollment, and that the terms of the contract were contained in the Law School Handbook, failed as a matter of law, warranting summary judgment. Such documents were not contractual.

In *Lee v. University of Michigan-Dearborn,* 2009 WL 1362617 (Mich.App. 2009) (unpublished opinion, attached at Ex. N), the Michigan Court of Appeals affirmed the dismissal under MCR 2.116(C)(8) and MCR 2.116(C)(10) of the plaintiff student's breach of implied contract and promissory estoppel claims regarding her expulsion from the University of

`

Michigan.  That plaintiff's claims were based on an allegation that the student code constituted a contract between the parties and a promise by the University, and that the University breached the code because its decisions did not comport with procedural or substantive due process. Upholding the lower court's dismissal of such claims, the Court stated: "Courts have declined to strictly apply contract law in the context of student-university relationships and claims that a contract existed between the university and the student have repeatedly failed."  *Id.* at *2.  The *Lee* Court further stated: "This court has implicitly rejected the contention that handbooks, codes, or other informational materials create contracts, expressly or otherwise, between universities and their students."  *Id.*  The Michigan Court of Appeals noted these deficiencies were equally applicable to promissory estoppel as to contract-based claims.  *Id.* at *3.

In *Sterrett v. University of Michigan,* 2014 WL 7722965 (Michigan Court of Claims) (Unpublished opinion, attached at Ex O.), the Michigan Court of Claims considered a suit by a student who was suspended after finding he had engaged in sexual misconduct by having sexual intercourse with a victim who did not consent.  The student claimed that the University violated an express or implied contract with the student that was based on the University's publications and procedures for addressing sexual misconduct allegations against students.  Dismissing the claims under MCR 2.116(C)(8) for failure to state a claim, the Court recognized:

> "The prevailing view of cases decided under Michigan law is that a student does not have a contractual right to enforce university policies.  The rationale for the decisions is often not explicitly stated, but mutual assent to be bound to the terms and consideration appear to be lacking.  This court will follow the approach that is reflected in the decisions of the Court of Appeals and hold that the plaintiff's contractual claim based on university policies and procedures fails to state a claim upon which relief can be granted"

*Id. at *4.*  The Court further recognized that Michigan Courts have rejected the existence of an implied contract in such circumstances, as well as claims based on a student's legitimate

19

`

expectations concerning the institution's adherence to such policies. *Id; see also Kieta v. Thomas Cooley Law School,* 290 Mich. App. 144, 148, n. 3 (2010)**Error! Bookmark not defined.** (dismissing plaintiff's appeal of dismissal of her claim concerning a school disciplinary determination as moot, but noting "for purposes of completeness" that "the student honor code did not create a contract.")

In the instant case, Plaintiff alleges he entered into a contract with Aquinas by virtue of Plaintiff <u>applying to and enrolling with the College</u>, and signing a scholarship agreement. (Complaint ¶248). Plaintiff bases his claims for breach of express or implied contract on an "understanding and reasonable expectation that the College would implement and enforce the provisions and policies set forth in its official publications, including the Sexual Assault Policy." (Complaint ¶249)  As is shown by the authorities above, a student's mere enrollment, and/or a college's student handbook provisions and informational materials are not sufficient to sustain a claim for breach of contract (express or implied) or promissory estoppel.  Accordingly, Counts II, III and IV of the Complaint must be dismissed for failure to state a claim.

5.  <u>Plaintiff States No Claim For Breach Of Contract Against the Non-Aquinas Defendants Because there is No Contract Alleged to Exist Between Them</u>**.**

To state a claim for breach of contract under Michigan law, a plaintiff must allege the following required elements:  (1) the existence of a contract between the parties, (2) the terms of the contract, (3) breach of the contract, and (4) damages.  *RBS Citizens Bank, N.A. v. Purther,* 22 F. Supp. 3d 747 (E.D. Mich. 2014).  In this case, Plaintiff does not allege a contract between himself and any party other than Defendant Aquinas College.  Specifically, in support of his breach of contract claims at Counts II and III, Plaintiff alleges that "[a]n express contract, or alternatively, a contract implied in law or in fact was formed between Plaintiff <u>and the College</u>." (Complaint ¶250) (emphasis added). Plaintiff alleges this contract was formed by virtue of

`

Plaintiff <u>applying to and enrolling with the College</u>, and signing a scholarship agreement. (Complaint ¶248). Plaintiff alleges this contract included an agreement, based on Plaintiff's reasonable expectations, that <u>the College</u> would implement and enforce the provisions and policies set forth in its official publications, including the Sexual Assault Policy. (Complaint ¶249). Plaintiff further bases his claim under Count III – Breach of Contract: Denial of Fairness/Arbitrary and Capricious Decision-making, on an alleged express or implied contract between himself and the College, or a common-law duty arising out of Plaintiff's relationship with the College. Plaintiff does not identify any contract between himself and any of the individual Defendants or the Board of Trustees. Plaintiff therefore fails to establish privity of contract between himself and such Defendants, and therefore fails to state a claim for breach of contract against them. Plaintiff's breach of contract claims at Counts II and III of the Complaint must be dismissed as to Defendants Quinn, Barrows, Salter, Quakenbush, Farley, Kwiatkowski, and the Board of Trustees.

6.   <u>Plaintiff States No Claim of Promissory Estoppel Against the Non-Aquinas Defendants as No Alleged Promise is Attributed to Them.</u>

The elements of a promissory estoppel claim under Michigan law consist of: (1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided. *Booker v. Detroit*, 251 Mich. App. 167, 174, 650 N.W.2d 680 (2002), rev'd in part on other grounds 469 Mich. 892, 668 N.W.2d 623 (2003). "The promise must be definite and clear, and the reliance on it must be reasonable. *Ypsilanti Twp. v. Gen. Motors Corp.*, 201 Mich. App. 128, 134, 506 N.W.2d 556 (1993).

`

In support of his promissory estoppel claim at Count IV of the Complaint, Plaintiff alleges <u>only</u> that <u>Defendant Aquinas College's</u> policies constituted a promise upon which Plaintiff should have been expected to rely.  (Complaint ¶275).  As shown above, Aquinas's policy statements and enrollment of Plaintiff are not sufficient to support a prove an estoppel claim.   In addition, Plaintiff alleges no promises or representations, express or implied, by Defendants Quinn, Barrows, Salter, Quakenbush, Farley Kwiatkowski, or the Board of Trustees as an entity distinct from Defendant Aquinas College.  Count IV must therefore be dismissed as to all such Defendants.

       7.     <u>Plaintiff States No Claim for Breach of Contract Based on Alleged Arbitrary and Capricious Decision-Making.</u>

Michigan Courts recognize that cases decided in the early-1900's under Michigan law suggesting the existence of a contractual right against arbitrary dismissal from an educational institution are more appropriately recognized and treated as cases citing a constitutional due process property interest in continuing education.   *See, Sterrett, supra* at *4 (Dismissing Plaintiff's claim for alleged breach of implied contract not to arbitrarily dismiss the student on the basis that such claim was, in substance, a constitutional procedural due process claim to be free from arbitrary dismissal, rather than a breach of contract claim.).  In the present case, Count III of Plaintiff's Complaint is based either on an alleged express or implied contract consisting of student code provisions, which are inadequate to support a contract as a matter of law, or as Plaintiff states, a "common law duty."  (Complaint ¶ 270).  This can be construed as nothing other than a thinly-veiled reference to constitutional due process or, perhaps, some unidentified tort.  In either event, it does not include the elements required for the breach of contract claim that is alleged, in that there is no "agreement" to support it.  Count III must be dismissed as to all Defendants for failure to state a claim.

`

8.    Plaintiff States No Claim for Negligence, Negligence Per Se or Gross Negligence.

a.    *Plaintiff's Claims Fail as to All Defendants Because There is No Special Relationship Creating a Legal Duty.*

To state a claim of negligence under Michigan law, the plaintiff must allege a duty on the part of the defendant, a breach of that duty, causation, and damages.  *Fultz v. Union-Commerce Associates,* 470 Mich. 460 (2004).  A duty to protect another arises only where a special relationship exists between the parties giving rise to such a legal duty.  *Williams v. Cunningham Drug Stores,* 429 Mich. 495 (1988).  The determination whether a duty-imposing special relationship exists in a particular case involves ascertaining whether the plaintiff entrusted himself to the control and protection of the defendant, with a consequent loss of control to protect himself.  *Murdock v. Higgins*, 208 Mich. App. 210, 215; 527 N.W.2d 1 (1994).

Michigan courts have not determined any special relationship between a private college and student in regards to the enforcement of disciplinary policies.  However, several other courts have considered the issue, including in the context of negligence claims by students who alleged negligence administration of Title IX policies and disciplinary procedures, and have found no such special relationship exists in this context, meaning there is no duty to support a negligence claim.  *See, e.g., Doe v. Columbia College Chicago,* 299 F. Supp. 3d 939, 962 (N.D. Ill. 2017) (rejecting negligence claim of former student who claimed negligent enforcement of disciplinary policies in a Title IX investigation of sexual assault because no special relationship exists between college and student giving rise to a duty of care*); Austin v. University of Oregon*, 205 F. Supp. 3d 1214, 1229 (D. Or. 2016) (University owed no duty to students who alleged negligent application of disciplinary policies; no special relationship exists between university and individual students); *Doe v. Amherst College*, 238 F. Supp. 3d 195, 228 (D. Mass. 2017) (Rejecting negligence claim based on alleged negligent enforcement of student code provisions;

`

no legal duty is owed directly to students relating to the implementation of student disciplinary proceedings); *Doe v. Trustees of Boston Coll.*, 2016 WL 5799297, at *28 (D. Mass. Oct. 4, 2016) (unpublished decision, attached at Ex. P) (rejecting negligence claim for alleged unfair sexual assault discipline; university does not owe duty of care to students in relation to disciplinary proceedings).

Here, Plaintiff's claims in Counts V and VI are all premised on a duty of care arising out of Plaintiff's enrollment at Aquinas and Aquinas's disciplinary procedures.  This is not sufficient to show a special relationship giving rise to a legal duty to support a negligence claim.

> b. *Plaintiff's Negligence Claims Fail against the Non-Aquinas Defendants Based on the Absence of Any Individual Alleged Duty.*

Separately, Plaintiff fails to state causes of action for negligence, negligence *per se*, or gross negligence against the Defendants other than Defendant Aquinas.  In support of such claims, Plaintiff alleges only that a duty to him arose out of the acceptance of Plaintiff's "enrollment as a student."  (Complaint ¶281)  Plaintiff alleges no particularized facts (nor could he) to support that any Defendant other than Defendant Aquinas College took that action. Defendant alleges no facts to show that any of the other Defendants owed Plaintiff any duty of care that was independent of the duties any such Defendants could conceivably have owed on behalf of Defendant Aquinas College as its agents.  Plaintiff's Complaint fails to plead the required elements for any negligence claims against any of the non-Aquinas Defendants.

9.  <u>Defendant Aquinas College Board of Trustees Should Be Dismissed as a Party Because it is Not a "Person" with the Capacity to be Sued.</u>

Legal capacity to sue or be sued is a prerequisite to a party's inclusion in a legal action. In Michigan, parties with the capacity to sue or be sued include natural persons, partnerships and related associations, corporations, and governmental units.  MCR 2.201.  In cases naming both a private college and its board of trustees as defendants, where the board is not a separate legal

`

entity with the capacity to be sued, dismissal of the board of trustees is appropriate. *See, Brown v. University of Findlay,* 2016 WL 1644666 (N.D. Ohio 2016) (unpublished decision, attached at Ex. Q); *Doe v. Case Western University,* 2017 WL 3840418 (N.D. Ohio 2017)(unpublished decision, attached at Ex. R) Here, Defendant Board of Trustees is not an independent legal entity from Aquinas College, does not have independent capacity to be sued, and should be dismissed.

**B.    If Count I is dismissed, but Other Counts Remain, Plaintiff's Claims at Counts II through Count VI Should be Dismissed for Lack of Subject Matter Jurisdiction.**

A claim is subject to dismissal for lack of subject matter jurisdiction. *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568 (6th. Cir. 2002)(citing Fed. R. Civ. P. 12(b)(1)**Error! Bookmark not defined.**; *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). "Pendent jurisdiction may be exercised over state claims only where federal jurisdiction is properly based on a colorable federal claim." *Wal-Juice Bar. Inc. v. Elliot*, 899 F.2d 1502 (6th Cir. 1990).

In this case, federal jurisdiction is based on Count I.  Counts II – VI are part of the case pursuant to pendent jurisdiction.  If the Court determines dismissal of Count I is appropriate, but after consideration of the above arguments declines to dismiss some or all of the remaining counts presently before it under pendent jurisdiction, such claims are based on state law and involve non-diverse parties, and should therefore be dismissed under Federal Rule 12(b)(1).

## IV.    CONCLUSION

For all of the above reasons, this Court should dismiss Plaintiff's Complaint entirely.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendants

Dated:  August 24, 2018          By:    _____*/s/ Stephanie R. Setterington*_____
                                       Stephanie R. Setterington (P58177)
                                       Charyn K. Hain (P46931)          13894958

25