UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

      Plaintiff,                                 Case No. 18-cv-00649

                                               Hon. Paul Maloney

v.                                          Magistrate Judge Ray Kent

AQUINAS COLLEGE and AQUINAS
COLLEGE BOARD OF TRUSTEES and
KEVIN KWIATKOWSKI,
STEPHEN BARROWS, KEVIN QUINN,
SANDY HARLEY, THAD SALTER, and
HEATHER QUAKENUSH,
as agents for AQUINAS COLLEGE,
jointly and severally,

      Defendants.

_____

| | |
|---|---|
| David A. Nacht (P47034) | Stephanie R. Setterington (P58177) |
| Adam M. Taub (P78334) | Charyn K. Hain (P46931) |
| NACHTLAW, P.C. | VARNUM LLP |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |
| 101 N. Main Street, Ste. 555 | Bridgewater Place, P.O. Box 352 |
| Ann Arbor, MI 48104 | Grand Rapids, MI 49501-0352 |
| (734) 663-7550 | (616) 336-6466 |
| dnacht@nachtlaw.com | srstterington@varnumlaw.com |
| ataub@nachtlaw.com | ckhain@varnumlaw.com |

_____

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

i

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................................................. iii

**INTRODUCTION** .............................................................................................................. 1

**STATEMENT OF FACT**S .................................................................................................. 3

   A.  Background ............................................................................................................... 3

   B.  More Than Eight Months Later, Roe Falsely Accuses Plaintiff of Sexual Assault and Defendants Begin Their Inadequate and Biased Investigation .................................... 4

   C.  Kwiatkowski's Investigative Report Contains Several Red-Flags ...................................... 6

   D.  Aquinas Expels Plaintiff Following Sham Hearing ........................................................... 10

   E.  Plaintiff's Appeals Are Wrongly Denied ........................................................................... 12

**STANDARD OF REVIEW** ................................................................................................ 13

**ARGUMENT** .................................................................................................................... 14

A.  Title IX ..................................................................................................................... 14

    1.  Plaintiff Has Pled Sufficient Facts to State a Claim for Gender Discrimination Under Title IX Pursuant to *Cummins* and Its Progeny ................................................ 14

    2.  Defendants Incorrectly Proffer an Exhaustion Requirement for Title IX that Does Not Exist Under the Law ....................................................................................... 19

   Breach of Contract and Promissory Estoppel ......................................................... 20

   C.  Negligence/Negligence Per Se/Gross Negligence ........................................................... 24

**CONCLUSION** ................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1974 (2007) .............................. 14

*Brown v. Matauszak*, 415 F. App'x 608 (6th Cir. 2011) .............................................. 14

*Carlton v. Trustees of the Univ. of Detroit Mercy*, 2002 Mich. App. LEXIS 512 (Mich. Ct. App. April 9, 2002) ........................................................................................................ 23

*Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153 (1987) ................................ 25

*Doe v. Baum*, 2018 U.S. App. LEXIS 25404, at *9 (6th Cir. Sept. 7, 2018) ........................ 15, 18

*Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561(D. Mass. 2016) ................................................. 23, 24

*Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 189 (R.I.D.C. 2016) ........................................... 18, 23

*Doe v. Cummins*, 662 Fed Appx. 437, 451 (6th Cir. 2016) ........................................................ 15

*Doe v. Lynn Univ., Inc.*, 235 F. Supp. 3d 1336, 1340-42 (S.D. Fla. 2017) .................................. 19

*Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018) .................................................... 16, 18, 19

*Doe v. Ohio State Univ.*, 311 F. Supp. 3d 881 (S.D. Ohio 2018) ................................................ 25

*Doe v. Syracuse Univ.*, 2018 U.S. Dist. LEXIS 157586 (N.D.N.Y. Sept. 16, 2018) .................. 20

*Doe v. Trs. of Bos. Coll.*, 892 F.3d 67 (1st Cir. 2018) ................................................................ 21

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) ........................................................... 25

*Doe v. Univ. of S.*, 2011 WL 1258104 (E.D. Tenn. Mar. 31, 2011) ............................................. 27

*Doe v. Univ. of St. Thomas*, 2017 WL 811905, at *9 (D. Minn. Mar. 1, 2017) ......................... 27

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ............................................................................... 15

*Faparusi v. Case W. Reserve Univ.*, 2017 U.S. App. LEXIS 19593, 6th Cir. Oct. 4, 2017 ........ 22

*Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238 (D. Vt. 1994)). ............................................ 23

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005) ........................................................ 25

*Florence Urgent Care v. Healthspan, Inc.*, 445 F. Supp. 2d 871 (S.D. Ohio 2006) .................. 23

*Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998). .................................. 21

*Giles v. Howard University*, 428 F. Supp. 603 (D.C.D.C. 1977) .................................. 22

*Greenberg v. Life Insurance Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999) ............................... 14

*Harris v. Mott Cmty. College*, 2014 Mich. App. LEXIS 583, (Mich. Ct. App. April 1, 2014).... 25

*Kieta v. Thomas M. Cooley Law Sch.*, 290 Mich. App. 144 (2010) .............................................. 26

*Mattox v. United States*, 156 U.S. 237 (1895) .............................................................................. 25

*Medical Planning Consulting, Inc. v. St. Mary's Med. Ctr.*, 2000 Mich. App. LEXIS 646, (Mich. App. Ct. June 13, 2000)................................................................................................ 24

*Moning v. Alfono*, 400 Mich. 425 (1977).................................................................................... 26

*Regents of the University of Michigan v Ewing*, 474 U.S. 214 (1985) ......................................... 24

*RMI Titanium Co. v. Westinghouse Elec.*, 78 F.3d 1125 (6th Cir. 1996) .................................... 14

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985) ............................................................ 26

*Schnurer v. Bd. of Control of Northern Michigan Univ.*, 1998 Mich. App. LEXIS 766, (Mich. App. Ct. Nov. 13, 1998 .................................................................................................... 26

*Weiner v. Klais and Co., Inc.*, 108 F.3d 86 (6th Cir. 1997)......................................................... 14

*Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y.) .................................................................... 23

*Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ........................................................... 15, 16

**Other Authorities**

34 C.F.R. § 668.46(k)(3)(i)........................................................................................................ 17

34 C.F.R. § 668.46(k)(3)(iv)...................................................................................................... 16

Title IX........................................................................................................................................ 1, 16

**Rules**

Fed. R. Civ. P. 12(d) .................................................................................................................. 13

Fed. R. Civ. P. 56....................................................................................................................... 13

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 13

iv

## <u>INTRODUCTION</u>

In the academic setting, in Title IX proceedings, accused males, including Plaintiff, John Doe, are being denied basic due process, impartiality, and fair investigations, hearings, and appeals. Unfortunately, educational institutions, like Defendant Aquinas College, are not leaving sexual assault investigations to the police and criminal justice system with their related procedural protections, and instead, are adjudicating the sex lives of students—most of whom are living without parental oversight for the first time—without providing the accused fair protections. Worse yet, private colleges, unbound from due process protections under the Constitution, are failing to adhere to their own policies, depriving accused students—who pay significant sums in tuition, room, and board—of a reasonably fair disciplinary process, constituting a material breach of contract. Here, Plaintiff's life was irreparably damaged when his accuser, Jane Roe, more than eight months after the alleged event, claimed that she was too drunk to consent when the two had sex during orientation their freshman year of college.

Despite the length in time between the event and the accusation, Plaintiff's vehement and consistent testimony that he engaged in consensual sex with his accuser, Plaintiff passing a polygraph exam, and witness statements that corroborated Plaintiff's version of the events, Defendants found Plaintiff responsible and expelled him from the College. The investigator the College assigned, Defendant Kevin Kwiatkowski, displayed bias against Plaintiff because of his gender, including telling Plaintiff's parents that he believed women do not make allegations of sexual assault unless they are true. He failed to include all exculpatory evidence in his report, included conclusions prohibited under the College's policies, and included a witness statement that was later redacted.

Had Defendants, including the Judicial Hearing Board ("JHB" or "Board")—comprised of Defendants Sandy Harley, Thad Salter, and Heather Quakenbush—actually reviewed the facts, they would have found that Roe's roommate and other witnesses all claimed that Roe was capable of consenting to sexual activity that night. Furthermore, Plaintiff's unwavering story—supported by a polygraph—is that Roe had around three shots of flavored vodka for the entire night and stopped drinking more than an hour before engaging in sexual activity with Plaintiff. According to every witness there that night, Roe was ambulatory, coherent, fully functional, and showed no signs of intoxication to the point of incapacitation. Roe, who gave several inconsistent statements regarding her memory of the events, is the only one present that night who claims that she was too drunk to engage in consensual sex.

Defendants also deprived Plaintiff of a fair hearing. Prior to the hearing, Defendants only gave Plaintiff one (1) hour to review Kwiatkowski's investigative interviews with Roe, ten (10) separate witness statements, and other evidence from the investigation. Additionally, although he requested it several times, Plaintiff was denied access to Roe's initial statement in December 2016 and the final Investigative Report that was provided to the Judicial Hearing Board prior to the hearing. He was only able to view information from December 2016 and the Investigative Report *after* the hearing and his expulsion when he requested a copy of his educational records under FERPA. Finally, at the hearing, Plaintiff could not directly cross-examine his accuser or any other witness and could not even face Roe as a physical barrier was placed between Plaintiff and Roe at the hearing. The hearing was limited to one (1) hour total and was cutoff ten (10) minutes early without explanation.

As a result, Defendants denied Plaintiff a fair and impartial investigation and hearing in violation of Title IX, Aquinas' own policies, and Plaintiff's contractual relationship with

2

Defendants. Defendant Stephen Barrows, Defendant Kevin Quinn, and the Board of Trustees subsequently refused to recognize the flagrant violations of Plaintiff's rights and upheld the Judicial Hearing Board's decision to expel Plaintiff from Aquinas College. As such, Defendants have violated Title IX, breached their contract with Plaintiff, and acted negligently. Therefore, Defendants' Motion to Dismiss should be denied.

## STATEMENT OF FACTS

### A.    Background

In August 2016, Plaintiff began freshman orientation at Aquinas College. (Compl. at ¶ 36) His third day on campus, on or about August 19, 2016, Plaintiff first met Jane Roe ("Roe") and her roommate ("Roommate"). (*Id.* at ¶¶ 5-6) After meeting while walking on campus, Plaintiff, Roe, and Roommate went to Plaintiff's dorm room. (*Id.* at ¶¶ 38-44) Once there, Plaintiff poured two shots of alcohol—one for Roe and one for Roommate—but did not consume any alcohol himself. (*Id.* at ¶ 45) Roe and Roommate each consumed about three shots of flavored vodka over a forty-five (45) minute period. After that forty-five (45) minute period, neither Roe nor Roommate consumed any more alcohol in Plaintiff's presence that night. (*Id.* at ¶ 46)

After some time at the dormitory, Plaintiff, Roe, and Roommate left the dormitory together in an effort to find a party but were unable to. (*Id.* at ¶ 53) While out, they ran into Witness 2 ("W2"), who would later recall that Roe was capable of walking on her own and was not too drunk to function. (*Id.* at ¶¶ 53, 145) Around 11:30 p.m., Plaintiff, Roe, and Roommate decided to go back to Roe and Roommate's room, and W2 left. (*Id.* at ¶ 54) Once there, Roommate informed Plaintiff and Roe that she was going to leave to go to her boyfriend's. (*Id.* at ¶ 55) Roe told Roommate that she should not have sex with her boyfriend. (*Id.* at ¶ 56) Roommate responded that she would not have sex with her boyfriend if Roe did not have sex with Plaintiff. (*Id.*) Roommate

would later state this "pact" was more of a joke because she knew Roe wanted Plaintiff to spend the night with her. (*Id.*) Roommate would also state that she noticed Roe had been flirting with Plaintiff and that the two seemed likely to engage in sexual activity that night, which is the reason she left to go to her boyfriend's. (*Id.* at ¶ 7)

After Roommate left, Plaintiff continued talking with Roe. (*Id.* at ¶ 57) Around 11:45, Roe sent a Facebook friend request to Plaintiff. (*Id.* at ¶ 58) Around midnight, Roe said she was going to get ready for bed. (*Id.* at ¶ 59) She went to the bathroom and returned wearing nothing but her bra and underwear. (*Id.*) She invited Plaintiff to stay with her for the night. (*Id.* at ¶ 60) Plaintiff offered to sleep in Roommate's bed, but Roe said she did not know if Roommate would like that and that Plaintiff should sleep in her bed. (*Id.* at ¶ 61) Roe then asked Plaintiff to give her a kiss goodnight, and the two engaged in consensual sex. (*Id.* at ¶¶ 62-67) At all times, Roe actively participated in the sexual encounter—in fact, she initiated it—and was coherent. (*Id.* at ¶¶ 68, 77) At all times relevant hereto on August 19, 2016, Roe was awake and alert. (*Id.* at ¶ 76) She was coherent, able to walk on her own, and fully functional. (*Id.*)

Although Plaintiff made attempts to contact Roe after August 19th because he was interested in dating her, she never responded. (*Id.* at ¶ 75) Plaintiff assumed that Roe was not interested in seeing Plaintiff again and stopped trying to contact her. (*Id.*)

## B. More Than Eight Months Later, Roe Falsely Accuses Plaintiff of Sexual Assault and Defendants Begin Their Inadequate and Biased Investigation

More than eight (8) months later, on or about April 26, 2017, Plaintiff received a Campus No-Contact Order from Defendant Kevin Kwiatkowski, the College's Director of Campus Safety, ordering him to have no further personal contact or communication with Roe. (*Id.* at ¶ 78) On or about May 3, 2017, Plaintiff was shocked to receive notice that he had been accused of sexually assaulting Roe. (*Id.* at ¶¶ 79-80) Specifically, Roe alleged that she was too drunk to recall what

happened on August 19th.[1] (*Id.* at ¶ 92) Roe also claimed that Plaintiff had followed her around at orientation activities on August 20th, had constantly tried to contact her after August 19, 2016, and had been showing everyone a photograph of her topless—although she admitted to not seeing the photograph herself.[2] (*Id.* at ¶ 93) Yet Plaintiff has received no indication that Roe ever went to the police or sought medical attention related to the incident despite her claiming that she was bruised and bleeding the next morning. (*Id.* at ¶ 11) Roe also posted a picture on Instagram the day after the incident of her with Roommate where the two of them are smiling, and there is no visible bruising on Roe in the picture.[3] (*Id.*) Moreover, Plaintiff did not have and has never had a topless photograph of Roe. (*Id.* at ¶ 94) He does, however, have a photograph of Roe and Roommate kissing his cheek from August 19th.[4] (*Id.* at ¶ 95) Plaintiff also could not have followed Roe on August 20th as he did not attend the morning orientation activities that day, and he made no effort to contact Roe after around September 1, 2016. (*Id.* at ¶ 96)

---

[1] Under Aquinas' policy, sexual assault is defined as "Any sexual act directed against another person, forcibly and/or against that person's will; or not forcibly or against the person's will where the victim is incapable of giving consent . . . ." (*Id.* at ¶ 81) Consent is defined as, "the freely, affirmatively communicated willingness to participate in sexual activity, expressed by words or unambiguous actions." (*Id.* at ¶ 82) Furthermore, "Consent may never be obtained . . . if the victim is mentally or physically disabled or incapacitated, including through the use of drugs or alcohol." (*Id.* at ¶ 83) Aquinas defines a mentally incapacitated person as one who "is rendered temporarily incapable of appraising or controlling his or her conduct due to the influence of a narcotic, anesthetic, or other substance administered to that person without his or her consent, or due to any act committed upon that person without his or her consent." (*Id.* at ¶ 85)

[2] Under the Student Conduct Code:

> Harassment is considered a violation of College policy when it has the purpose or effect of demonstrating disregard for the rights of or respect for others; when it shocks the sensibilities of the average person; or when it occurs after a warning that such communication or behavior is considered offensive.

(*Id.* at ¶ 91)

[3] Plaintiff provided this picture to Defendants as part of the investigation. (*Id.* at ¶ 109)

[4] Plaintiff also provided this picture to Defendants as part of the investigation. (*Id.* at ¶ 95)

The College assigned Kwiatkowski as the Investigator into Roe's allegations against Plaintiff. (*Id.* at ¶ 99) Contrary to Title IX and Aquinas' policies, Kwiatkowski's investigation was inadequate and biased, including him overstepping his role as an information gatherer and ignoring the evidence exonerating Plaintiff and crediting Roe's inconsistent statements. (*Id.* at ¶ 12) During the initial meeting to discuss the complaint, Kwiatkowski stated to Plaintiff's parents that it has been his experience that "women do not make these allegations unless they are true". (*Id.* at ¶ 102) Furthermore, on information and belief, Kwiatkowski is an alumnus of Aquinas College and personally knew Roe's mother who attended the College at the same time, which he never disclosed. (*Id.* at ¶ 101) Yet, under Aquinas' policy and Title IX, the investigator must be neutral. (*Id.* at ¶ 103)

On or about July 21, 2017, Plaintiff received a Notice of Title IX Hearing, informing him that the investigation had concluded, the Judicial Hearing Board ("JHB" or "Board") had reviewed the Investigative Report, and the Board determined that a hearing should be scheduled to address the charges of sexual assault and harassment against Plaintiff. (*Id.* at ¶ 115)

## C.    Kwiatkowski's Investigative Report Contains Several Red-Flags

While he was denied access to review it prior to the hearing, Plaintiff later learned that Kwiatkowski's Investigative Report includes a conclusion that there were excerpts from interviews that provide a preponderance of the evidence standard to support Roe's claim. (*Id.* at ¶ 118) The "excerpts" pertained to the amount of alcohol Roe alleged that she consumed, ignoring all contradictory witness statements and other evidence, including Plaintiff's polygraph report.[5] (*Id.*)

---

[5] During the course of the investigation, Plaintiff submitted himself to a highly invasive four-hour polygraph exam by a highly regarded examiner who determined that Plaintiff was truthful in answering all questions, including that he did not force Roe to have sex with him and that Roe was not incapacitated in any way. (*Id.* at ¶¶ 112-14)

6

Moreover, there was a copy of a drink chart and several calculations from on-line Blood

Alcohol Content ("BAC") calculators from which Kwiatkowski concluded, "Ms. Complainant

[Roe] would be at best impaired but most likely intoxicated based on above." (*Id.* at ¶ 119) There

was no indication, based on the charts, that Roe would have been incapacitated. (*Id.*) The

"Analysis" in the Investigative Report also stated:

> Based on personal interviews of the Complainant [Roe] and [Plaintiff] and
> numerous witnesses, for both the Complainant and Respondent, ***it is apparent*** that
> the Complainant was in a vulnerable state due to alcohol provided by (Plaintiff) on
> 8/19/16.

(*Id.* at ¶ 120) (emphasis added) Furthermore, the Investigative Report contained a "conclusion" in

which Kwiatkowski wrote:

> ***It is my consideration*** that there is sufficient evidence for this matter to proceed
> within the policies and procedures regarding student conduct at Aquinas College.
> ***It is my opinion*** that the Complainant was not able to provide consent based on
> alcohol consumption.

(*Id.* at ¶ 121) (emphasis added) Yet, Aquinas' Sexual Assault Policy states, "The investigator

prepares a written summary of the evidence. The summary is limited to facts and does not contain

conclusions or credibility determinations." (*Id.* at ¶ 122) Although Kwiatkowski should not have

made ***any*** conclusions or credibility determinations, the conclusions and credibility determinations

he made are not even supported by the evidence presented. (*Id.* at ¶ 123)

There were additional flaws in Kwiatkowski's investigation. Kwiatkowski was aware of

and had access to allegations Roe initially raised against Plaintiff in December 2016. (*Id.* at ¶¶

124-25) When Roe first accused Plaintiff of any misconduct in December 2016, she claimed she

was off-campus when Plaintiff gave her a lot of alcohol. (*Id.* at ¶ 154) She then claimed that she

"blacked out," and she heard from other students that Plaintiff had assaulted her. (*Id.*) She had no

independent recollection of an alleged assault and stated she was okay. (*Id.*) This statement from

December 2016 contradicts her later statement to Kwiatkowski. Roe would later claim to remember some details of what happened on August 19, 2016. (*Id.* at ¶ 155) In her first statement, Roe could not recall how many shots she had, but in her second statement, she claimed to recall having at least three shots before drinking out of the bottle. (*Id.* at ¶ 152) Roe initially could not recall who allegedly carried her on the way back from an alleged party, but in her second statement, she claimed she recalled Plaintiff carrying her. (*Id.*) Roe initially claimed that after returning from an alleged party,[6] the rest of the night was a blur, but in her second statement, she recalled going to the dorm room with Roommate, Roommate leaving for her boyfriend's, and Plaintiff getting into bed with her. (*Id.*) And in her first statement, Roe could not recall anything about having sex with Plaintiff, but she later claimed that she remembered touching Plaintiff's necklace while they were having sex. (*Id.*) Despite these inconsistencies, Kwiatkowski failed to include ***any*** reference to the December 2016 statement in his investigation report. (*Id.* at ¶ 12)

Plaintiff, however, did not receive any detail regarding the December 2016 allegations until ***after*** the hearing when he was able to view his educational file through a request under FERPA.[7] (*Id.* at ¶ 129) In fact, prior to the hearing date, Defendants only permitted Plaintiff one hour to review two investigative interviews of Roe, ten (10) witness statements, and other evidence; and he could not copy, take photos of, or record the documents in any way. (*Id.* at ¶ 130) The material Plaintiff could review did ***not*** contain a copy of the Investigative Report or any statements from Roe or the RA regarding the allegations made by Roe in December 2016. (*Id.* at ¶ 131) On or about August 3, 2017, Plaintiff asked if any additional witness statements had been taken since his review

---

[6] Roe was the ***only*** witness with first-hand knowledge who testified that anyone went to a party that night. In fact, Plaintiff, Roommate, and W2 all denied attending any party. (*Id.* at ¶ 153)

[7] However, per current Aquinas policy, "In the event a matter is scheduled for hearing, the parties will be provided reasonable opportunity to review statements and evidence as provided in the General Provisions in preparation for the hearing." (*Id.* at ¶ 165)

on July 26th. (*Id.* at ¶ 132) He was then informed that there were two more interviews with witnesses and that he could review them in-person prior to the hearing. (*Id.*) On the same date, Plaintiff made his second request to review a copy of the Investigative Report and any documentation regarding the initial allegations by Roe to the College in December 2016. (*Id.* at ¶ 133) Access to both was again denied. (*Id.*) On or about August 8, 2017, Plaintiff reviewed the two additional witness statements. (*Id.* at ¶ 134) In addition to the new witness statements, there was a copy of a screenshot of Roe's phone showing a "missed call" from Plaintiff on March 24, 2017[8] and a copy of a prescription medication list supplied by Roe.[9] (*Id.*)

From what Plaintiff could review of the evidence, it became clear that Roe was the only witness with first-hand knowledge who provided details leading to Kwiatkowski's conclusion. First, Roommate's statement to Aquinas corroborated much of Plaintiff's version of the events. (*Id.* at ¶ 137) According to Roommate, she left to go to her boyfriend's because she thought that Roe was interested in Plaintiff and that she thought they would likely have sex; she did not want to be in the room when it happened. (*Id.* at ¶ 138) She admitted that Roe was flirting with Plaintiff. (*Id.* at ¶ 139) She also stated that Roe was capable of saying "no" if she did not want to have sex with Plaintiff that night. (*Id.* at ¶ 140) Roommate told Kwiatkowski that Roe was not proud of what happened and regretted having sex with Plaintiff but did not tell her that she was sexually assaulted. (*Id.* at ¶ 141) Roommate did not recall seeing any bruising on Roe on August 20, 2016.

---

[8] This screenshot was the only evidence presented that Plaintiff had attempted to contact Roe after September 2016, but Plaintiff's phone records show he did not make this call. (*Id.* at ¶ 176)

[9] Although not referred to, or referenced in any of the interviews with Roe, the prescription list for the "date of service" of August 27, 2016 (eight days after the alleged assault) showed a prescription for Citalopram, an anti-depressant. When asked at the hearing if this prescription was a refill, Roe's answer was "yes". (*Id.* at ¶ 135) The prescription list also showed a prescription for Microgestin 1/20, a *monthly* birth control prescription. (*Id.* at ¶ 136) Roe stated in her second interview with Kwiatkowski that she had been on a ***three-month*** birth control prescription in August 2016. (*Id.*)

(*Id.* at ¶ 142) Finally, according to Roommate, she and Roe discussed details of the sexual relations between Roe and Plaintiff on August 20, 2016, including that Roe and Plaintiff had sex multiple times that night and the size of Plaintiff's penis. (*Id.* at ¶ 143)

According to W2's statement, Roe was capable of walking on her own and was not too drunk to function. (*Id.* at ¶ 145) Statements from Roe's suitemates confirm that they both recalled Roe being coherent and with Plaintiff on the night of August 19th when one asked Roe if she could use the shower. (*Id.* at ¶ 151) Both suitemates witnessed Roe and Plaintiff alone above the covers and dressed. (*Id.*) Roe made no verbal or non-verbal indication that she wanted to leave or that she wanted Plaintiff to leave. (*Id.*) Plaintiff also found witness statements from multiple individuals who were not with Roe or Plaintiff that night, several of which, including Roe's boyfriend at the time of the investigation, relied solely on hearsay. (*Id.* at ¶ 146) In regard to the harassment charges involving an alleged topless photograph that Roe claimed Plaintiff had of her, of the twelve (12) witnesses interviewed, only ***one*** claimed to have seen the photo. And when asked to describe it, the witness' description made it clear that the photo was not of Roe. (*Id.* at ¶ 157)

Troublingly, one of the hearsay statements contained a redacted paragraph. (*Id.* at ¶ 147) Plaintiff was denied an opportunity to review an unredacted copy of this statement. (*Id.* at ¶ 148) On information and belief, the unredacted copy contained a reference to a different sexual encounter, which on information and belief, was supplied to the Judicial Hearing Board ("JHB" or "Board"). (*Id.* at ¶ 149) Under Aquinas' policy, however, Plaintiff had a right to not have his irrelevant past conduct, including sexual history, considered in the JHB's decision. (*Id.* at ¶ 150)

## D.    Aquinas Expels Plaintiff Following Sham Hearing

The hearing took place on or about August 8, 2017. (*Id.* ¶ 163) As discussed above, Plaintiff was not given the opportunity to respond to any of the findings of the Investigative Report prior to

the hearing as he was denied access to it. (*Id.* at ¶ 161) The JHB was composed of Defendants Sandy Harley, Thad Salter, and Heather Quakenbush. (*Id.* at ¶ 31) But Defendants did not disclose the identity of the JHB Members prior to the hearing. (*Id.* at ¶ 164)

Aquinas policy states, "The complainant has the right to be visibly shielded from the view of the accused during the hearing." (*Id.* at ¶ 167) Here, Aquinas placed a curtain between Plaintiff and Roe so that Plaintiff and Roe could not see each other. (*Id.* at ¶ 168) Aquinas policy also states:

> The complainant and accused may only ask questions to each other through a member of the Judicial Hearing Board, unless they consent to direct questioning by each other. The Judicial Hearing Board shall have control of the hearing, and may make such procedural rulings as it deems necessary to assure the fairness and efficiency of the proceedings. This may include extending the hearing to allow other identified witnesses to testify.

(*Id.* at ¶ 169) As Roe did not consent to direct questioning, Plaintiff had no opportunity to directly cross-examine her or any other witness, or to engage in discovery. (*Id.* at ¶ 170) Furthermore, no transcript was made of the hearing testimony. (*Id.* at ¶ 171)

The hearing was scheduled to last an hour total, but the JHB limited it to fifty (50) minutes without explanation. (*Id.* at ¶ 172) Even before Plaintiff spoke, he could tell that the Judicial Hearing Board would find him responsible. (*Id.* at ¶ 180) The Board was uninterested in the polygraph results, and only one Board member took notes. (*Id.* at ¶ 181) The Board did not have any of the eye-witnesses interviewed by Kwiatkowski provide live testimony and, on information and belief, relied solely upon Kwiatkowski's Investigative Report and findings, despite being instructed not to. (*Id.* at ¶ 182)

At the beginning of the hearing, Plaintiff was given an opportunity to read a prepared statement in which he denied, and continues to deny, the allegations made against him. (*Id.* at ¶ 173) In his statement, Plaintiff raised the concerns with Roe's accusations as outlined above. (*Id.*) Roe chose not to give a statement. (*Id.* at ¶ 174) She only answered the questions the Board posed

11

to her. (*Id.*) The Board only asked Plaintiff three to five questions. (*Id.* at ¶ 178) One of the questions was whether Plaintiff ever referred to Roe as his "trophy girl." (*Id.* at ¶ 179) His response was "no." (*Id.*) During questioning, Roe admitted that Plaintiff had not talked to her throughout 2017 and only presented the screenshot showing a missed call from Plaintiff in March 2017 discussed above, which is at odds with Plaintiff's phone records. (*Id.* at ¶¶ 175-76) When asked by the Board about her conversation with her roommate the next morning, Roe did not deny talking about having sex with Plaintiff, or the size of Plaintiff's penis, but instead stated she "did not mean it in a complimentary way." (*Id.* at ¶ 177) She did not say that she did not remember having sex or had "blacked out." (*Id.*)

On or about August 14, 2017, Plaintiff received notice that he had been found responsible of sexual assault and behavioral misconduct and harassment by a preponderance of the evidence standard. (*Id.* at ¶ 183) As a result, Plaintiff was expelled from Aquinas College. (*Id.* at ¶ 184) The Board provided no rationale for its decision, and Aquinas refused to disclose the rationale or if the decision was unanimous. (*Id.* at ¶ 185) In reality, the Board reached an erroneous conclusion based solely on Plaintiff's gender and Kwiatkowski's gender-biased report, in direct violation of Aquinas' policies and Title IX. (*Id.* at ¶¶ 186, 196)

**E.    Plaintiff's Appeals Are Wrongly Denied**

On or about August 19, 2017, Plaintiff appealed the decision to Defendant, Provost Stephen Barrows.[10] (*Id.* at ¶ 187) The basis of the appeal was that there was not a preponderance of the evidence showing he committed the offenses alleged against him; that he was given inadequate

---

[10] Defendants attached Plaintiff's appeal letters to Defendant Barrows and Defendant Quinn in a heavily redacted form. While Plaintiff is sensitive to complying with FERPA and protecting the identities of those involved in this matter given the subject of this litigation, Plaintiff requests that the Court review the records in an unredacted form, either through *in camera* review or filing under seal through protective order.

opportunity to defend himself; and the expulsion was too severe a penalty. (*Id.* at ¶ 188) Plaintiff also pointed out that he had never received a copy of the December 2016 complaint and the Investigative Report. (*Id.* at ¶ 189) On or about August 30, 2017, Plaintiff received notice that the appeal was denied. (*Id.* at ¶ 190) Provost Barrows determined that it was not erroneous for the Judicial Hearing Board to fail to consider Roe's complaint in December 2016, reasoning that her 2016 Statement was a "pre-process" document prepared by a Resident Advisor ("RA"). (*Id.* at ¶ 191) He did not explain how a prior inconsistent statement by Roe would be irrelevant when determining her credibility. (*Id.* at ¶ 192) He did not comment at all about Plaintiff being denied access to the Investigative Report prior to the hearing.[11] (*Id.* at ¶ 193)

Once Plaintiff was able to review Kwiatkowski's Investigative Report, he appealed the Provost's decision to Defendant, President Kevin Quinn, on or about December 22, 2017. (*Id.* at ¶ 198) Plaintiff raised the same issues listed above in his appeal. (*Id.* at ¶ 199) Like Provost Barrows, President Quinn denied the appeal on or about February 22, 2018. (*Id.* at ¶ 200) President Quinn did not provide a rationale for his conclusions. (*Id.* at ¶ 201) As a result, Plaintiff filed the instant action.

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.[12] *RMI Titanium Co. v. Westinghouse Elec.*, 78 F.3d 1125, 1134 (6th

---

[11] It was after this appeal that Plaintiff was finally able to review Kwiatkowski's Investigative Report, including Kwiatkowski's erroneous conclusion that there was sufficient evidence to conclude that Roe was unable to provide consent based on the amount of alcohol she allegedly consumed. (*Id.* at ¶ 194)

[12] Defendants bring their "Motion to Dismiss" under Fed. R. Civ. P. 12(b), not Fed. R. Civ. P. 56. As such, the Court should disregard any extraneous evidence submitted by Defendants. *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009). And to the extent the Court exercises its discretion under Fed. R. Civ. P. 12(d) to consider such evidence and treat Defendants' defective motion as a Motion for Summary Judgment, Plaintiff "must be given a reasonable opportunity to present all the

Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 2018 U.S. App. LEXIS 25404, at *9 (6th Cir. Sept. 7, 2018).

## ARGUMENT

### A.    Title IX

#### 1.    Plaintiff Has Pled Sufficient Facts to State a Claim for Gender Discrimination Under Title IX Pursuant to *Cummins* and Its Progeny

In *Doe v. Cummins*, 662 Fed Appx. 437, 451 (6th Cir. 2016), the Sixth Circuit recognized claims under Title IX for erroneous outcome. "A successful 'erroneous outcome' claim requires the plaintiff to show that the outcome of the University's disciplinary proceeding was erroneous because of sex bias." *Id.* at 452 (internal quotes omitted). "[T]o state an erroneous-outcome claim, a plaintiff must plead: (1) 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) a 'particularized . . . causal connection between the flawed outcome and gender bias.'" *Id.* (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d

---

material that is pertinent to the motion." *Id.* This case is still in the pleading stage, and no discovery has been conducted by either party. Moreover, to the extent that this Court considers extraneous evidence under *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), without converting Defendants' Motion to one for Summary Judgment, it must be careful to accept the factual allegations in the complaint as true. *Iqbal*, *supra*.

[13] Even if this Court finds that Plaintiff failed to plead plausible claims, Plaintiff should be permitted to file a curative amendment at this early stage of litigation. *Brown v. Matauszak*, 415 F. App'x 608 (6th Cir. 2011).

Cir. 1994)). Plaintiff, here, has pled sufficient facts to meet both elements.

First, there are numerous facts that cast doubt on the accuracy of the outcome of the disciplinary proceeding.

> [T]he pleading burden in this regard *is not heavy*. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof.

*Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) (emphasis added).

Plaintiff has pled numerous facts regarding the evidentiary weaknesses in Defendants' findings. Roe's own description of the events of August 19th are inconsistent, both with other witness statements and with her own statements given at different points in time. The JHB made no effort to explain how they found Roe credible despite her memory somehow becoming better over time. Initially, Roe could not recall how much alcohol she consumed but later claimed she had at least three shots before drinking out of the bottle. (*Id.* at ¶ 152) She also alleged that she was carried at some point but could not recall who it was but then alleged that Plaintiff carried her. (*Id.*) Roe also stated she could not recall what happened after returning to the dormitory but later recalled going to the dorm room with Roommate, Roommate leaving for her boyfriend's, and Plaintiff getting into bed with her. (*Id.*) She also later claimed that she remembered touching Plaintiff's necklace during sex despite initially saying she was "blackout" drunk. (*Id.*)

In *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018), the Sixth Circuit held "At the motion-to-dismiss stage, where all reasonable inferences must be drawn in favor of the plaintiff, the unresolved inconsistency in Jane's statement, the unexplained discrepancy in the hearing panel's finding of fact, and the alleged use of an erroneous definition of consent creates 'some articulable doubt' as the accuracy of the decision." The female accuser in *Miami Univ.* claimed

she initially agreed to digital penetration, but at some point told the accused to stop. *Id.* at 592. He did, but then asked if he could engage in oral sex. *Id.* The accuser claimed that she said no, he proceeded anyway, and then she pushed him away without saying, "no." *Id.* The hearing panel found that the accuser said no, but the accused continued anyway. *Id.* The Sixth Circuit found that the accuser's statement was inconsistent in that she said she said "no" and later said that she "never said no." *Id.* According to the court, it was sufficient for an erroneous outcome claim that the hearing panel did nothing to resolve the inconsistency or "elucidate why it found the oral sex to be non-consensual when it appears to have found that the digital penetration was consensual." *Id.*

The error here is even more severe. The JHB provided no explanation for its findings ***at all***. (Compl. at ¶¶ 231-32) It simply stated that Plaintiff was responsible under a "preponderance of the evidence" standard. (*Id.* at ¶ 231) Yet, the regulations to Title IX state, "the result must also include the rationale for the result and the sanctions." 34 C.F.R. § 668.46(k)(3)(iv). Unlike in *Miami Univ.*, 882 F.3d at 592, where the accused could not even recall the critical events in question, Plaintiff here credibly gave statements that he engaged in consensual sex with Roe, (Compl. at ¶ 173). He even submitted a polygraph report, bolstering the truthfulness of his adamant denials. (*Id.* at ¶¶ 111-14) Statements from witnesses actually present only further corroborated Plaintiff's version of the events and discredited Roe's. (*Id.* at ¶¶ 137-57) But the JHB still determined Roe was more credible without providing an explanation for its determination.

In addition to the evidence Defendants ignored, Plaintiff sufficiently pled procedural defects in Defendants' investigation and hearing.[14] Here, Plaintiff has pled that Kwiatkowski, the

---

[14] Under Title IX, 20 U.S.C. § 1092(f)(8)(B)(iv), "Procedures for institutional disciplinary action in cases of alleged domestic violence, dating violence, sexual assault, or stalking, which shall include a clear statement that such proceedings shall provide a prompt, fair, and impartial investigation and resolution . . . ." Furthermore, in part, the Obama-era regulations for Title IX further clarify, that "a prompt, fair, and impartial proceeding includes a proceeding that is

College's Director of Campus Safety, conducted a biased and deficient investigation. In particular, he failed to follow Aquinas' own policies in including conclusions in his report. (Compl. at ¶¶ 118-23) He also failed to include Roe's inconsistent December 2016 statement in his report, despite his knowledge of the statement. (*Id.* at ¶¶ 12, 124-25) And the investigation report contained a redacted witness statement that on information and belief was unredacted when supplied to the JHB and contained information that the JHB was not permitted to consider in its decision. (*Id.* at ¶¶ 147-50) Finally, the failure to allow cross-examination invalidates the process. *See Doe v. Baum*, 2018 U.S. App. LEXIS 25404, at *21 (6th Cir. Sept. 7, 2018). Plaintiff made the same allegation as in *Baum*. (Compl. at ¶¶ 170, 173) Therefore, Plaintiff has pled sufficient facts to meet the first element.

Second, Plaintiff has sufficiently pled gender bias. "Requiring that a male student conclusively demonstrate, at the pleading stage, with statistical evidence and/or data analysis that female students accused of sexual assault were treated differently, is both practically impossible and inconsistent with the standard used in other discrimination contexts." *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 189 (R.I.D.C. 2016). Thus, sufficient allegations "might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Miami Univ.*, 882 F.3d at 593 (internal quotation marks omitted). For example, in *Baum*, 2018 U.S. App. LEXIS 25404, at *22-24, the Sixth Circuit held that it was sufficient to plead external pressure to punish males with evidence that the hearing body discredited all males, including the accused, and credited all

---

conducted in a manner that is consistent with the institution's policies and transparent to the accuser and accused; provides timely and equal access to the accuser, the accused, and appropriate officials to any information that will be used during informal and formal disciplinary meetings and hearings; and conducted by officials who do not have a conflict of interest or bias for or against the accuser or the accused." 34 C.F.R. § 668.46(k)(3)(i).

females:

> When viewing this evidence in the light most favorable to Doe, as we must, one plausible explanation is that the Board discredited all males, including Doe, and credited all females, including Roe, because of gender bias. And so this specific allegation of adjudicator bias, combined with the external pressure facing the university, makes Doe's claim plausible. Indeed, other courts facing similar allegations have reached the same result. *See, e.g.*, *Miami Univ.*, 882 F.3d at 594 (plaintiff's complaint was sufficient where allegations included that the university faced "pressure from the government to combat vigorously sexual assault on college campuses and the severe potential punishment—loss of all federal funds—if it failed to comply"); *Doe v. Columbia Univ.*, 831 F.3d 46, 56-57 (2d Cir. 2016) (plaintiff's complaint pointing to student group criticism and university statements was sufficient to raise a plausible inference of bias under a "minimal plausible inference" standard); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017) (plaintiff's complaint was sufficient where allegations suggested that university was trying to "appease" a biased, student-led movement); *Doe v. Lynn Univ., Inc.*, 235 F. Supp. 3d 1336, 1340-42 (S.D. Fla. 2017) (plaintiff's complaint was sufficient where allegations suggested that university was reacting to "pressure from the public and the parents of female students" to punish males accused of sexual misconduct); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751 (S.D. Ohio 2014) (plaintiff's complaint was sufficient where, taken together, his allegations suggested that university was "reacting against him[] as a male" in response to a Department of Education investigation).

Here, Plaintiff has pled:

- From the outset, the investigation was slanted in favor of the female complainant;

- The investigator, Kwiatkowski, conducted his investigation and used investigative techniques in a manner designed to attempt to credit the female complainant's version of events and to discredit the male respondent's version of events;

- ***Kwiatkowski admitted to Plaintiff's parents that he believed women do not make allegations of sexual assault unless they are true***;

- On information and belief, Kwiatkowski failed to disclose his bias and prior acquaintance with Roe's mother;

- Kwiatkowski failed to account for Roe's December 2016 statement and ignored Roe's inconsistent statements;

- Kwiatkowski ignored witness statements that credited Plaintiff's account of the events and discredited Roe's accounts of the events;

18

- Kwiatkowski accepted the complainant's statements at face value, despite the lack of corroboration for many of her assertions and the inconsistent statements she had made;

- In contravention of Aquinas's policies, Kwiatkowski provided the JHB with his own conclusions, including that there was allegedly a preponderance of the evidence to show that Plaintiff sexually assaulted Roe; and

- The JHB, Provost, and President reached a final decision that was directly at odds with the reliable and credible evidence they had, and at odds with Aquinas's policies concerning consent and incapacitation. The explanation for their determination is bias against Plaintiff, a male student.

(Compl. at ¶ 234 (emphasis added)) Moreover, Plaintiff pled that the procedures and policies followed by Aquinas are themselves gender biased. (*Id.* at ¶¶ 235-40)

Plaintiff also pled facts regarding the pressure on Aquinas to punish accused males and believe female accusers. Specifically, Plaintiff pled that Kwiatkowski stated to Plaintiff's parents that it has been his experience that "women do not make these allegations unless they are true." (*Id.* at ¶ 204) Furthermore, upon information and belief, one of the members of the JHB, Sandy Farley, was previously employed from 1997-1999 by R.A.V.E., a support group predominately for ***women*** against domestic violence and sexual assault. (*Id.* at ¶ 205) Plaintiff also noted the pressure from the Office of Civil Rights regarding sexual misconduct prior to September 2017. (*Id.* at ¶ 212) Such facts are sufficient to state claim for erroneous outcome under Title IX.[15] *See Doe v. Syracuse Univ.*, 2018 U.S. Dist. LEXIS 157586, *31-32 (N.D.N.Y. Sept. 16, 2018) ("Doe . . . has coupled his factual allegations with the allegations of public pressure on the University to more aggressively prosecute sexual abuse allegations.").

### 2.    Defendants Incorrectly Proffer an Exhaustion Requirement for Title IX that Does Not Exist Under the Law

---

[15] Should the Court hold these pleadings insufficient, Plaintiff could amend his complaint to include allegations regarding campus events at Aquinas designed to put the spotlight on the impact of violence and sexual assault ***against women***. *See, e.g.* https://www.mlive.com/news/grand-rapids/index.ssf/2009/03/aquinas_college_students_jane.html.

Defendants, at great length, discuss the Title IX deliberate indifference standard articulated in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998). *Gebser*, however, has no bearing on this matter. In a recently issued opinion, the Sixth Circuit explicitly held that deliberate indifference claims do not "appl[y] in the context of university disciplinary proceedings." *Doe v. Baum*, 2018 U.S. App. LEXIS 25404, at *26-27 (6th Cir. Sept. 7, 2018). The Sixth Circuit again recognized that the deliberate indifference standard only applies in ***sexual harassment*** cases. *Id.* at 27. It is simply a different standard from claims regarding a biased disciplinary process. *Id.*; *cf. Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 90 (1st Cir. 2018) ("Neither the Supreme Court nor this Circuit have adopted a framework for analyzing claims by students challenging a university's disciplinary procedures as discriminatory under Title IX.").

## B.      Breach of Contract and Promissory Estoppel

"Generally . . . the relationship between a student and a private university is contractual in nature. Accordingly, a student may raise breach of contract claims arising from a university's alleged failure to comply with its rules governing disciplinary proceedings." *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011) (internal citations omitted). "In reviewing a student's breach of contract claim against his or her university, we employ a reasonable expectations standard in interpreting the relevant contracts." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 80 (1st Cir. 2018). "In the context of disciplinary hearings, we 'review the procedures followed to ensure that they fall within the range of reasonable expectations of one reading the relevant rules.'" *Id.* (quoting *Cloud v. Trs. of Bos. Univ.*, 720 F.2d 721, 724-25 (1st Cir. 1983)). This makes sense given the nature of the relationship. Private colleges are not held to the strictures of the Constitution. *See Giles v. Howard University*, 428 F. Supp. 603, 604 (D.C.D.C. 1977). Thus, private colleges must provide students, who pay significant amounts for tuition, room, and board,

reasonably fair disciplinary procedures to prevent unwarranted expulsions. Otherwise, colleges could pocket large amounts from students and expel them without the student having recourse.

The Sixth Circuit has recognized a cause of action for breach of contract where colleges fail to follow their own policies in a manner that falls outside the reasonable range of expectations of one reading the relevant rules and policies.[16] *See Faparusi v. Case W. Reserve Univ.*, 2017 U.S. App. LEXIS 19593, at \*17-19 (6th Cir. Oct. 4, 2017); *Finch v. Xavier Univ.*, 689 F. Supp. 2d 955, 968-69 (S.D. Ohio 2010). Moreover, courts within the Sixth Circuit have recognized, "Public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other. Any agreement . . . has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract." *Florence Urgent Care v. Healthspan, Inc.*, 445 F. Supp. 2d 871, 879 (S.D. Ohio 2006) (internal citations omitted). *See also*, *See Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 593 (Mass. D.C. 2016) ("'The student-college relationship is essentially contractual in nature. The terms of the contract may include statements provided in student manuals and registration materials.'") (quoting *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998)); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 191 (R.I.D.C. 2016) ("The relevant terms of the contractual relationship between a student and a university typically include language found in the university's student handbook."); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y.) ("A college is 'contractually bound to provide students with the procedural safeguards that it has promised.'") (quoting *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 243 (D. Vt. 1994)).

Michigan courts "have rejected a rigid application of contract law in the area of student-

---

[16] While Defendants claim that tuition payments themselves cannot constitute a "contract," if necessary, Plaintiff can amend his complaint to include that his written student housing contract specifically incorporated the student conduct code, which includes its policies on sexual assault.

university relationships." *Tapp v. Western Michigan*, 1999 Mich. App. LEXIS 2832, at \*7-8 (Mich. Ct. App. December 28, 1999). They have also recognized some contractual right to continued enrollment. In *Carlton v. Trustees of the Univ. of Detroit Mercy*, 2002 Mich. App. LEXIS 512, at \*7 (Mich. Ct. App. April 9, 2002), the Michigan Court of Appeals recognized, "The United States Supreme Court has held that a student who has been accepted to a university has an implied contractual right to continued enrollment in that university. This implied contractual right gives the student the right to continued enrollment free from arbitrary dismissal." (citing *Regents of the University of Michigan v Ewing*, 474 U.S. 214, 223 (1985)). Even more, Michigan courts have recognized that a material breach is determined based on "the nature and terms of the contract, the duties and obligations placed upon the parties, the relationship of the parties, the course of dealing between the parties, the nature and extent of the breach, the hardship caused, and any bad faith of the breaching party." *Medical Planning Consulting, Inc. v. St. Mary's Med. Ctr.*, 2000 Mich. App. LEXIS 646, at \*12 (Mich. App. Ct. June 13, 2000). As described above, the fundamental unfairness of allowing a private college to circumvent its own procedures in disciplinary proceedings, leads to such a violation being a material breach of contract.

Plaintiff, here, has pled sufficient facts that Defendants' decision to expel him was both a breach of his contractual right to a reasonable fair disciplinary process and was arbitrary and capricious. In fact, Defendants' policies explicitly provide that students will receive due process in disciplinary proceedings. Yet, as discussed above, because Defendants failed to provide a justification for their determination, it was arbitrary. (Compl. at ¶¶ 231-32) Further, because Plaintiff could not cross-examine witnesses, the JHB's decision to credit Roe's statement over Plaintiff's was arbitrary. "The ability to cross-examine is most critical when the issue is the credibility of the accuser." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 605 (D. Mass. 2016).

"Evaluation of a witness's credibility cannot be had without some form of presence, some method of compelling a witness 'to stand face to face with the [fact finder] in order that it may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 402 (6th Cir. 2017) (quoting *Mattox v. United States*, 156 U.S. 237, 242-43 (1895)). Thus, the Sixth Circuit has held, "cross-examination is '***essential to due process***' . . . where the finder of fact must choose 'between believing an accuser and an accused.'" *Id.* at 405 (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005)) (emphasis added). Since *Univ. of Cincinnati*, courts in the Sixth Circuit have continued to hold that cross-examination is critical to these types of disciplinary proceedings. *See, e.g.*, *Univ. of Miami*, *supra*; *Doe v. Ohio State Univ.*, 311 F. Supp. 3d 881 (S.D. Ohio 2018). Recently, the Sixth Circuit held that due process requires cross-examination by the accused or the accused's representative. *Baum*, *supra*. Defendants' policy preventing Plaintiff from cross-examining Roe is in breach of Defendants' contractual promise of providing a non-arbitrary decision when expelling a student.

Defendants, however, claim that no such cause of action exists under Michigan law. *See Harris v. Mott Cmty. College*, 2014 Mich. App. LEXIS 583, at *13 (Mich. Ct. App. April 1, 2014) ("This Court has declined to find that a student handbook creates a contract, express or implied, between universities and students."[17]). Michigan cases, however, have not involved the material

---

[17] The cases *Harris* relied on to reach this conclusion have distinguishable holdings. In *Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153, 156-58 (1987), the Michigan Court of Appeals held that the plaintiff could not rely on a statement from an academic advisor regarding the date she would complete her degree to create an enforceable contract or promise. And in *Kieta v. Thomas M. Cooley Law Sch.*, 290 Mich. App. 144, 148, n.3 (2010), the Michigan Court of Appeals held that a student honor code could not create a contract, but that statement was in dicta and relied exclusively on *Cuddihy*. In fact, in *Kieta*, the trial court specifically "allowed plaintiff to amend her complaint to raise claims of breach of contract and arbitrary and capricious conduct," but her appeal was ultimately dismissed as moot. *Id.* at 145-46.

breach at issue here. For example, in *Schnurer v. Bd. of Control of Northern Michigan Univ.*, 1998 Mich. App. LEXIS 766, at *9-10 (Mich. App. Ct. Nov. 13, 1998), the Michigan Court of Appeals held that plaintiff failed to support a breach of contract claim relating to keeping sidewalks clear of snow where the university had not given the plaintiff any information that could have given her the impression that the university was guaranteeing her safety on campus. Thus, this case is significantly different from those relied upon by Defendants.

**C.      Negligence/Negligence Per Se/Gross Negligence**

Even if there is no contractual right to school handbook codes, the policies create a duty Defendants must follow under a negligence standard. Thus, Plaintiff's negligence claims are alternative to his breach of contract claims. *See Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985) ("[I]n a contractual setting, a tort action must rest on a breach of duty distinct from contract."). In Michigan, "The elements of an action for negligence are (i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage." *Moning v. Alfono*, 400 Mich. 425, 437 (1977). "'Duty' comprehends whether the defendant is under any obligation to the plaintiff to avoid negligent conduct; it does not include -- where there is an obligation -- the nature of the obligation: the general standard of care and the specific standard of care." *Id.* "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id.* at 438-39. As it was foreseeable that a disciplinary proceeding could occur regarding student conduct (evidenced by the existing of Aquinas' policies), they owed some duty to Plaintiff regarding those proceedings.

Courts within the Sixth Circuit have recognized the general duty owed to students in the university disciplinary process given the far-reaching and damaging implications that result from

24

a finding of responsible. For example, in one case, the Eastern District of Tennessee held:

> [I]n this case a jury could find that the harm caused by the University's allegedly and arguably haphazard implementation of its own Sexual Assault Policies was foreseeable, especially where here, as there, the harm was severe: a wrongful conviction by a disciplinary committee.

*Doe v. Univ. of S.*, 2011 WL 1258104, at *21 (E.D. Tenn. Mar. 31, 2011). See also, *Doe v. Univ. of St. Thomas*, 2017 WL 811905, at *9 (D. Minn. Mar. 1, 2017) (upholding Plaintiff's claim for negligence and noting there are some instances where a special relationship between a student and a college or university creates a duty of care).

As pled in Plaintiff's complaint, Defendants were grossly negligent in their disregard of following their own policies, causing Plaintiff to be expelled from school. (Compl. ¶¶ 286-90) This included not only Aquinas College but the individually-named Defendants. (*Id.*) As such, Plaintiff has successfully pled claims regarding Defendants' negligence, and Defendants' Motion to Dismiss those claims should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court DENY Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted,

/s/ David A. Nacht
David A. Nacht (P47034)
Adam M. Taub (P78334)
NACHTLAW, P.C.
Date: September 21, 2018          Attorneys for Plaintiff

## PROOF OF SERVICE

I hereby certify that on September 21, 2018, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of such filing to all of the attorneys of record.

/s/ Karina Alvarez
Karina Alvarez, Litigation Secretary