UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――――――――――

JOHN DOE,

        Plaintiff,

v.

AQUINAS COLLEGE and AQUINAS
COLLEGE BOARD OF TRUSTEES and
KEVIN KWIATKOWSKI, STEPHEN
BARROWS, KEVIN QUINN, SANDY
HARLEY, THAD SALTER, and
HEATHER QUAKENBUSH, as agents for
AQUINAS COLLEGE, jointly and severally,

        Defendants.

Case No. 1:18-cv-00649

Honorable Paul L. Maloney
Magistrate Judge Ray Kent

---

| | |
|---|---|
| David A. Nacht (P47034) | Stephanie R. Setterington (P58177) |
| Adam M. Taub (P78334) | Charyn K. Hain (P46931) |
| NachtLaw, P.C. | Varnum LLP |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 101 N. Main Street, Suite 555 | Bridgewater Place, P.O. Box 352 |
| Ann Arbor, MI  48104 | Grand Rapids, MI  49501-0352 |
| (734) 663-7550 | (616) 336-6466 |
| dnacht@nachtlaw.com | srsetterington@varnumlaw.com |
| ataub@nachtlaw.com | ckhain@varnumlaw.com |

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

      While Plaintiff's brief contains a number of factual allegations that are incomplete and/or untrue, such factual disputes are not the focus of this current motion. To avoid confusion of the issues, Defendants will not argue them here.  The focus of this motion  is whether, putting aside for the time being the lack of merit to what Plaintiff alleges in his complaint, the complaint nonetheless fails to state claims for which relief can be granted.   Plaintiff's response in

opposition to Defendants' motion confirms the answer to this question is "yes" and that Plaintiff's complaint should be dismissed in its entirety.  In reply to Plaintiff's brief in opposition, Defendants raise the following additional points in support of dismissal.

1. **Because Plaintiff Failed to Contest Several of Defendants' Arguments, the Complaint Should Be Dismissed in Its Entirety Against All Defendants Other Than Aquinas College.**

Failing to respond to arguments properly raised in a motion to dismiss constitutes abandonment of the failing party's position. *Washington v. Roosen, Varchetti & Oliver, PPLC,* 894 F. Supp. 2d 1015, 1027 (W.D. Mich. 2012).  In his response to Defendants' motion, Plaintiff failed to contest or address in any way several arguments Defendants asserted that defendants other than Defendant Aquinas College should be dismissed from particular claims and/or dismissed as parties based on failure to state claims against them.  The arguments Plaintiff has not contested include:

- Section III.A.3 (moving for dismissal of Count I Title IX claim against all Defendants other than Aquinas College because such Defendants are not recipients of federal funding);

- Section III.A.5 (moving for dismissal of Count II and Count III breach of contract claims against all Defendants other than Aquinas College based on failure to identify any alleged contract between Plaintiff and any such Defendants);

- Section III.A.6 (moving for dismissal of Count IV promissory estoppel claim against all Defendants other than Defendant Aquinas College based on the failure to identify any alleged promise by any such Defendants);

- Section III.A.8.b (moving for dismissal of Count V and Count VI negligence claims against all Defendants other than Aquinas College based on the failure to identify any individual duty on the part of any such Defendants);

- Section III.A.9 (moving for dismissal of Defendant Aquinas College Board of Trustees from all claims on the basis it is not a legal entity or "person" with the capacity to be sued).

Plaintiff's opposition to Defendants' motion is based only on the alleged obligations of Defendant Aquinas College and not on any alleged obligations of any of the other named Defendants in the case.  Plaintiff states no basis why the alleged obligations of Defendant Aquinas College should suffice to establish claims against any of the other named Defendants. Defendants' above-referenced arguments set forth in their principle brief together present sound and undisputed bases for dismissal of every count of Plaintiff's complaint against all named Defendants other than Defendant Aquinas College.  Defendants therefore request that the complaint be dismissed in its entirety as to Defendants Aquinas College Board of Trustees, Kevin Kwiatkowski, Stephen Barrows, Kevin Quinn, Sandra Farley[1], Thad Salter, and Heather Quakenbush, based on Plaintiff's failure to state claims against them for which relief can be granted.

**2.  Plaintiff Misconstrues *Doe v. Baum*, and, Has Not Met The Standards Necessary To Pursue a Private Action Under Title IX.**

In response to Defendants' argument (at Section III.A.2 of its principle brief) that Plaintiff cannot pursue a private cause of action under Title IX at all, because he never notified Defendant Aquinas College of alleged gender discrimination prior to filing suit, Plaintiff cites in

---

[1] Plaintiff's caption and complaint incorrectly references Sandra Farley as "Sandy Harley."

superficial fashion to the recent Sixth Circuit case of *Doe v. Baum*, for the proposition that "deliberate indifference claims do not appl[y] in the context of university disciplinary proceedings." (Response, Dkt #6, at p. 24.) This "sound bite" overstates the actual scope of the issue decided in the *Baum* case. Review of the decision reveals that *Baum* dealt with an entirely different question than is presented in this case, and its holding is not the sweeping proposition Plaintiff suggests. As set forth below, *Baum* does not impact the viability of Defendants' argument, and does not preclude this Court from dismissing Plaintiff's Title IX claim based on Plaintiff's lack of notice to the College, prior to filing suit, that he had concerns of sex discrimination. Dismissal of the Title IX complaint on this basis is proper and indeed required in light of the origin and structure of the statute, and Supreme Court precedent outlining the prerequisites for maintaining a private action against a recipient of federal funds.

In *Baum,* the plaintiff, a former student who had been expelled from the University of Michigan based on a finding of responsibility for sexual assault against another student, attempted to use a "deliberate indifference" theory to establish a claim for a violation by the University under Title IX. That variety of "deliberate indifference" theory had been utilized by certain other lower courts in Title IX disciplinary action cases in recent years. That theory was an argument that a plaintiff can prove a case and establish liability under Title IX by showing that the institution responded with deliberate indifference to the plaintiff's complaint of gender bias.[2] In other words, the plaintiff in *Baum,* like other similar plaintiffs before him, attempted to

---

[2] The plaintiff/appellant in *Baum* argued on appeal: "Defendants also violated Title IX under the 'deliberate indifference standard' because officials at the University who had actual notice of the Board's misconduct, and had the authority to institute corrective measures, were deliberately indifferent to the misconduct." *Doe v. Baum, Appellant's Brief,* 2018 WL 495116 (attached as Exhibit A.)

4

argue "deliberate indifference" on the part of the college is *sufficient* to establish Title IX liability on the part of the college.

To the extent this theory borrowed concepts from *Gebser v. Lago Vista Independent School District* and its progeny, it is not what *Gebser* stood for, and strays far from the fact pattern, rationale and holding of that case. *Gebser* articulated the prerequisites for *maintaining a private action* under Title IX in federal court. In other words, *Gebser* addressed what is *necessary* for a claim to proceed in the form of a private action against a funding recipient in federal court, i.e. the "floor" for moving forward with a private claim. *Gebser* did not hold that an institution's deliberate indifference to a complaint of discrimination was itself a violation of Title IX. The underlying gender discrimination still needed to be proven.

In *Baum,* unlike the present case, there was no dispute that the plaintiff *had notified* the University of Michigan of his allegations of gender discrimination in the disciplinary process prior to filing his lawsuit. The University's prior knowledge of the plaintiff's sex discrimination allegations was established. Further, unlike the Defendants' argument regarding "notice" in the present case, the plaintiff in *Baum* did not identify an open question within the circuit about whether the "deliberate indifference" theory he was promoting should be applied, nor did he articulate a reason that the Sixth Circuit should change course from the previous application of the concept of "deliberate indifference" only in the context of sexual harassment cases. (Ex. A, at p. 21.) On these facts, the Sixth Circuit Court of Appeals rejected the application of the plaintiff's "deliberate indifference" theory as a means to establishing liability in a case involving alleged wrongful treatment in a disciplinary proceeding.

The *Baum* court did not address the more fundamental question -- which is the question presented by our present case -- whether a plaintiff can maintain a private right of action against

5

an institution under Title IX, when the plaintiff cannot plead or establish that he ever notified the institution of his gender discrimination concerns prior to filing suit, or, indeed, that the institution had knowledge of the nature of his concern from any source. In the present case, though Plaintiff alleges in his complaint that he was subjected to gender bias and discriminatory treatment by individuals in his disciplinary process, he does not plead, nor can he, that he ever reported such concerns to the College before suing.[3] The rationale stated in *Gebser* applies with the same force to this sort of case as it does to cases involving alleged sexual harassment by individual school employees. A private action in this circumstance is at odds with the statutory structure and intent of Title IX.

Review of published Sixth Circuit decisions does not reveal any previous consideration of this issue by a court in our circuit. Though admittedly the question of the "knowledge" requirement has not arisen frequently in any circuits (likely because in most cases the plaintiff *does* inform the institution of his or her gender discrimination concerns before suing on them), certain courts that have addressed the issue outside the context of sexual harassment have confirmed that actual knowledge of alleged gender discrimination, followed by a failure to respond in good faith to such an allegation (i.e., deliberate indifference in responding), is a prerequisite to maintaining a private right of action in court. Examples of those cases are cited in Defendants' principle brief. For the same reasons as articulated in *Gebser* and its progeny, including such cases that involve alleged sex discrimination other than sexual harassment, this Court should find that Title IX does not allow a private right of action absent the funding institution's prior actual knowledge of the allegation of sex discrimination and failure to respond to such allegation in good faith.

---

[3] Plaintiff's allegations of gender bias are meritless on the facts as well, but that is a separate issue that need not be reached given that his claims are ripe for dismissal now on the pleadings.

In light of the absence of notice, Plaintiff's arguments in opposition to Defendants' motion to dismiss the Title IX claim, in which he argues that he pleads a valid "erroneous outcome" claim under *Doe v. Cummins* and its progeny, are all beside the point. This is because Plaintiff fails to meet the baseline requirement for pursuing a private right of action, in that he does not and cannot allege Aquinas had knowledge of his complaints of gender discrimination and an opportunity to address them prior to his filing of the instant suit.

3.   **To Support His Breach of Contract and Promissory Estoppel Claims, Plaintiff Improperly Relies Upon Court Decisions That Do Not Involve and Do Not Harmonize With Michigan Law.**

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). In Plaintiff's brief, in opposition to Defendants' arguments that Plaintiff's breach of contract and promissory estoppel claims should be dismissed, Plaintiff relies either on federal court cases that interpreted the state laws of other states, or on state court decisions of states other than Michigan, interpreting their own state laws.

State law contract and promissory estoppel principles vary significantly between states, particularly in the context of educational institutions, student handbooks, and the extent to which they create contractual obligations. For example, Plaintiff cites *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011), but the breach of contract claim in that case was brought under Tennessee law, which has identified different standards for claims based on student handbooks than have been established in Michigan courts. Michigan courts, unlike Tennessee courts, have explicitly rejected contract claims and promissory estoppel claims based on student handbook procedures. *Id.* The same is true for the Sixth Circuit cases Plaintiff cites, including

7

*Faparusi v. Case W. Reserve Univ.*, 2017 U.S. App. LEXIS 19593, at *17-19 (6th Cir. Oct. 4, 2017), and *Finch v. Xavier Univ.*, 689 F. Supp. 2d 955, 968-69 (S.D. Ohio 2010). Both such cases were based on Ohio contract law, which is different than Michigan law in that Ohio law treats student disciplinary procedures as contracts.[4] Plaintiff's reliance on the contract and promissory estoppel laws of other states is not proper, particularly in light of the established principles of Michigan law applicable to cases based on university handbook policies.

**4. Plaintiff Conflates and Mischaracterizes Michigan Law Decisions in Attempting to State A Basis for His Breach of Contract Claims.**

Plaintiff cites the unpublished opinion of *Tapp v. Western Michigan University,* 1999 Mich. App. LEXIS 2832 (1999)[5], in support of his contract claims. (Dkt # 6, at p. 283.) However, *Tapp* actually supports Defendants' arguments, in that it found the *absence* of a sufficient contractual relationship between the student and the university to support a tortious interference claim by the former student against an individual he claimed interfered with his educational rights and opportunities. *Id.* at *7.

Plaintiff also relies on the unpublished 2002 opinion of *Carlton v. Univ. of Detroit Mercy,* 2002 Mich. App. LEXIS 512 (2002), in support of his assertion that Michigan courts recognize an implied contractual right to continued enrollment free from arbitrary dismissal. (Dkt # 6, at p. 283.) However, the *Carlton* decision relied solely on cases involving public institutions, where a right of constitutional due process applies, and failed to note important distinctions between public and private institutions in terms of such due process obligations. *Carlton, supra,* at p. *5-*7. As noted in the 2014 *Sterrett v. University of Michigan* decision cited in Defendants' principle brief, it is a mischaracterization to frame such claims as claims for

---

[4] Plaintiff's citation of cases interpreting laws of various other states is similarly inappropriate.

[5] The *Tapp* decision is provided at Plaintiff's Brief in Opposition, Ex. 10, Dkt # 6, p. 366.

breach of an implied contract, rather than claims for constitutional due process. *See, Sterrett v. University of Michigan,* 2014 WL 7722965[6] (dismissing plaintiff's claim for alleged breach of implied contract not to arbitrarily dismiss the student on the basis that such claim was, in substance, a constitutional procedural due process claim to be free from arbitrary dismissal, rather than a breach of contract claim).[7]

Plaintiff also claims that Defendants' brief cites decisions that do not deal with the level of "material breach" he claims exists in this case due to his expulsion. However, the authority cited in Defendants' principle brief <u>does</u> include cases involving claims of wrongful expulsion and suspension, including disciplinary actions based on findings of sexual misconduct. *See, Lee v. University of Michigan-Dearborn,* 2009 WL 1362617 (Mich. App. 2009) (expulsion based on finding of stalking, harassment); *Sterrett, supra* (multi-year suspension for finding of sexual misconduct in the form of non-consensual sex with another student).

**5.    Plaintiff Fails to State Any Binding or Persuasive Authority to Show the Existence of a Duty to Support Negligence Claims.**

Similar to the breach of contract and promissory estoppel claims, Plaintiff relies on *Doe v. Univ. of the S.,* 2011 WL 1258104 (E.D. Tenn. 2011), to argue the existence of a legal duty in

---

[6] The *Sterrett* decision is attached as Exhibit O to Defendants' principle brief, Dkt # 5, p. 205.

[7] While not an issue for the Court to decide in this motion, Plaintiff's brief contains a number of "red herrings" including the suggestion that cross-examination was not permitted in the case. Plaintiff egregiously mischaracterizes the disciplinary process that occurred in this case to portray it as arbitrary and capricious. The SAJP followed involved equal advance opportunity to both parties to review evidence, the ability to have a support person including an attorney if desired, a live hearing, the opportunity for each party to call witnesses, the attendance of Plaintiff and his attorney at all components of the hearing, the presentation of testimony by other live witnesses, and the opportunity for the parties to cross-examine each other and other witnesses at the hearing, though cross examination was handled by the parties posing their questions through the JHB. Plaintiff's brief also completely ignores the fact that a live witness testified at the hearing that Plaintiff had shown him a picture of a topless female and represented that it was of Roe, corroborating Roe's account on that alleged violation.

support of his negligence claims. However, the Tennessee law at issue in that case differs materially from the negligence standards under Michigan law.

Under Michigan law, a duty to protect another arises only where a special relationship exists between the parties giving rise to such a legal duty. *Williams v. Cunningham Drug Stores*, 429 Mich. 495 (1988). In Tennessee, "all persons" owe a duty "to everyone" to refrain from conduct that poses an unreasonable and foreseeable risk of harm. *Doe v. Univ. of the S.,* 2011 WL 1258104 at *57. This difference renders Plaintiff's reliance on Tennessee law inappropriate as it conflicts with established negligence principles under Michigan law. If review of other state laws is necessary, the Court should consider cases involving states that utilize a similar "special relationship" standard to Michigan's, such as the cases Defendants cited in their principle brief.

## **CONCLUSION**

For all of the above reasons, and for the reasons stated in Defendants' principle brief, Plaintiff's complaint should be dismissed in its entirety.

        Respectfully submitted,

        VARNUM LLP
        Attorneys for Defendants

Dated:  October 5, 2018    By:    */s/ Stephanie R. Setterington*
        Stephanie R. Setterington (P58177)
        Charyn K. Hain (P46931)
        Bridgewater Place, P.O. Box 352
        Grand Rapids, MI  49501-0352
        (616) 336-6000
        srsetterington@varnumlaw.com
        ckhain@varnumlaw.com

14076603_1.docx